## SUPREME COURT

WILLIAM CLEMENTS agt. THE VILLAGE OF WEST TROY.

Where the positive acts of the original proprietors of lands, amount to an *immediate dedication* of the easement, or right of way to the public, over a strip of ground designated, and set apart by the owners, as a street or alley, an immediate *acceptance and use* of the thing dedicated is not necessary, in order to secure the right of the public in it. (*This is adverse to the same case,* 16 *Barb.* 251.)

Nor is it necessary, to establish the dedication of land for the purposes of a highway, to show that the public have been in the uninterrupted use of it for a length of time that would authorize the presumption of a *grant* of the easement. The doctrine of *prescription* involves the presumption of a *grant;* and, in the case of the public, there can be no grantee. The public may use, as a thoroughfare, the land of an individual for a period *short of twenty years,* with the assent of the owner of the soil, and a *dedication* of the public right of way may be presumed.

There may be a dedication of an easement to the public, by the direct, affirmative and unequivocal acts of the owner of the soil—an *immediate* dedication of the land for streets, and conferring upon the public, the right to use the land for the purposes contemplated by the dedication, whenever they shall deem it proper. The only question arising, in relation to this form of dedication, where there has been no immediate public use of the thing, is, as to the necessity of showing an acceptance, for the purpose of securing the protection of the public rights. Where there has been a dedication of an easement to the public, by the owner of the soil, the *naked fee* of the land remains in the owner, subject to the public use.

This is so in regard to all roads in the *country*, whether made public easements by being laid out in the mode provided by statute, or by dedication. It is so in regard to the roads, streets and alleys, within the corporate limits of West Troy. Neither the public nor the corporation of that village, in trust or otherwise, hold the fee of the soil appropriated for streets and alleys.

It is otherwise in the *City of New York*. There, where the owner of the soil, by his own direct and positive acts, dedicates part of it to the public, as in the country, an easement or right of way vests *immediately* in the public—the mere naked fee remaining in the owner of the soil. But when the corporation of that city choose to open a street, thus dedicated to the public use, steps are required to be taken to vest them with the fee in the soil of the street. When there has been a dedication to the public of a street, it is to be taken, without compensation for the right of way, whenever the corporation choose to open it. It is not understood that the corporation are to do any thing (*ratification or acceptance,*) to complete the *dedication* to the public of a right of way. (*See Wyman* agt. *The Mayor, &c., New York,* 11 *Wend.* 486.)

*It seems,* that if there can be no dedication of a right of way to the public, without acceptance, and that acceptance is only to be evinced by the public authorities opening and laying out the street or highway in the mode prescribed by law, the doctrine of dedication of a right of way to the public is substantially overthrown, both in city and country.

In the dedication of a right of way to the public of an alley, street or road, no person or body clothed with authority, is required to take an affirmative action to give effect to such dedication. The right results from use by the public, with the consent of the owner of the soil; or by express and positive action of the owner devoting or yielding the easement to the public.

*Albany Circuit, March,* 1854.—*Trial by the Court.*

THIS action was brought to restrain the defendants from interfering with, injuring or removing a certain barn and outhouses, erected by the plaintiff, on what he claimed to be the rear of a lot, in the village of West Troy, known as lot No. 39 on a map or plan of the village, made by and for the original proprietors of the lands, of which lot No. 39, on the westerly side of Rochester street, formed a part. The defence was, that the buildings were upon a public alley or highway, (twenty feet wide,) between Rochester and Champlain streets; that this alley was dedicated to the public use as early as 1828, by the original proprietors of the soil; and that, in the exercise of the power vested in the defendants, to regulate and improve the streets and alleys of the village, they had removed the buildings from the alley, some ten feet east of the center thereof. The facts are sufficiently stated in the opinion of the court.

D. WRIGHT & W. W. FROTHINGHAM, *for plaintiff.*

J. H. BRISBIN & H. A. BRIGHAM, *for defendants.*

WRIGHT, Justice. As early as 1828, certain proprietors of lands, in a part of the now village of West Troy, caused a survey and map to be made of the tract, dividing it into village lots: streets were marked and named on the map or plan of the proprietors. The field-book or memoranda of the survey, and the map, also designated two streets running parallel, viz. Rochester and Champlain streets. The lots on the west side

of Rochester street, numbered from two to thirty-nine, commencing at Buffalo street on the south, and running north. The lots on the east side of Champlain street, numbered from one to twenty-one, beginning at Buffalo street on the south, and running north. The south side line of lot No. 2, on the west side of Rochester street, and of lot No. 1, on the east side of Champlain street, were parallel with Buffalo street. Lot No. 39 on the west side of Rochester street, and lot No. 21 on the east side of Champlain street, were the extreme north lots on those streets. On the field-book, an alley was described as between Champlain and Rochester streets, extending from Buffalo street to the north side line of lot No. 39 on Rochester street, and to the north side line of lot No. 21 on Champlain street, on a course north, eighteen degrees east, and was twenty feet wide. All the lots fronting on the west side of Rochester street, were described as extending west to an alley twenty feet wide ; and those fronting on the east side of Champlain street, were bounded on the east by this alley. This alley was made the rear boundary of all the lots fronting on Rochester and Champlain streets. The map and field-book of the proprietors of the tract thus surveyed, mapped and divided, were deposited and filed in the office of the clerk of the county of Albany, on the 10th of July, 1829. In October, 1829, the proprietors, by a partition deed, conveyed to each other a part of the lots lying on Champlain and Rochester streets, and bounding and describing all of them according to these descriptions in the field-book and map above referred to. Lot No. 39, on the west side of Rochester street, and which is now claimed to be owned, and is in fact occupied by the plaintiff in this action, was by this deed conveyed to Richard P. Hart, one of the proprietors. In May, 1833, Hart, by deed, conveyed lot No. 39 to one Columbus S. Marshall, and described it as being known and distinguished on a map of West Troy, made by William Roberts, jr., bearing date 7th of March, 1828, and filed in the clerk's office of Albany County, as lot No. 39, on Rochester street, being thirty feet wide in front and rear, with side lines at right angles with said street, *extending westerly to*

*an alley twenty feet wide.*    Marshall built a house on the front
of the lot, but there was no fence in the rear, and the same re-
mained open until five or six years prior to the commencement
of this suit, when the plaintiff, who had come into the occupa-
tion of lot No. 39, built a barn and other out-houses on what
he claimed to be the rear thereof; but which buildings were
erected upon, and partly obstructed, the alley designated in the
field-book of the original proprietors.    West of these buildings
erected by the plaintiff, there has never been any enclosure or
erections, but the ground has been more or less used by the
public for piling lumber.    The buildings of the plaintiff ob-
structed about ten feet on the alley.

The south part of the alley, towards Buffalo street, has been
opened and worked since it was surveyed and plotted out by
the original proprietors, or at least since the incorporation of
the village of West Troy, which was in 1836.    Proceeding
northerly, upon the centre line of the alley, it had been more
or less obstructed up to 1852, when the defendants undertook
to remove the obstructions.

In 1836, the defendants were incorporated.    By the act of
incorporation, the board of trustees of the village were consti-
tuted commissioners of highways within the corporate limits,
which limits embraced the tract of land surveyed and mapped
by the proprietors as a village.    The board were also clothed
with the power of regulating the streets, lanes and alleys,
within the bounds of the corporation.    In August, 1837, the
board of trustees passed an ordinance, adopting the survey
made by Roberts, for the proprietors of that part of the village
of West Troy, and the field-book and map filed in the county
clerk's office.    The ordinance also adopted, and declared the
grounds marked on such map, and specified in the field-book
and survey, to be thereafter the public highways, streets, lanes
and alleys, in that part of the village covered by, and included
in said field-book and map; that the names of the streets and
alleys, as marked on the map, to be, and remain the names
thereof, for all legal purposes; that the clerk of the village
procured a true copy of the field-book and map, and kept the

same in his office, as a record for the inspection of all persons concerned; and that the grounds designated as streets, lanes and alleys, on the copy of the before mentioned map and field-book, so kept and deposited in the village clerk's office, should be, and were declared public highways for all legal purposes whatsoever. The board of trustees, in lieu of making an actual survey themselves of the streets, lanes and alleys, and naming them, adopted or accepted the location and names made by the original proprietors; and, as a record of such survey and location, directed their clerk to procure a copy thereof, to be kept and deposited in his office.

In 1850, the legislature remodelled the charter of the village, but without interfering with its boundaries, or in terms declaring the streets therein public highways. The amended charter, however, exempted the village from the superintendence and control of the commissioners of highways of the town of Watervliet, (in which town it was situated,) and constituted the trustees commissioners of highways therein, possessing all the power, and charged with all the duties of commissioners of highways in towns, except as provided in the amended act. The act made it the duty of the trustees to give directions for the laying out, *making*, repairing and preserving of highways, streets, alleys, lanes, &c., and cause them to be repaired from time to time, as might be necessary. Also, to regulate streets, roads, lanes, alleys, already laid, or thereafter to be laid out, and alter such of them as they should deem inconvenient, subject to the restrictions contained in the act. (*Laws of* 1850, *chap.* 230, § 48.) The 49th section provided the mode of assessing by the board, within the village, the tax for defraying the ordinary expenses of making, repairing and laying out of roads, alleys and highways.

The 51st section provided, that whenever the trustees should deem it necessary to make or repair any street, public square, alley or highway in the village, they were to give public notice in a village newspaper, for three weeks successively, requiring the owners of lands, lots, or parts of lots, in front of, or adjoining which, the street, alley or highway was required to be

made or repaired, to do the same in such manner as the board should direct, within six weeks from the first publication of the notice, or that the same would be done by the trustees, and the expense thereof charged upon the owners of the lots, in front of, or adjoining the improvement; and, in case the owners of the land or lots should neglect or refuse to make the improvements within the time limited therefor, the trustees were authorized to do the same, and assess the expenses thereof upon the lands or lots respectively.

In 1852, the trustees instituted proceedings under the amended charter, to open the alley between Rochester and Champlain streets, its whole length, and to the width of twenty feet.

They caused the center line to be run on the course given in the field-book of the original proprietors.

Amongst other obstructions in the northern part of the alley, were the plaintiff's rear buildings; they were found to be about ten feet upon it.

The notice required by § 51 of the amended charter, was given to the owners of lots lying on the alley west of Rochester street, and east of Champlain street, from Buffalo street north, to open the alley opposite their respective lots, and remove all obstructions therefrom, to the width of ten feet from the center thereof. The plaintiff neglected, or refused to remove his barn and out-houses within the time limited therefor, and the same were removed by the trustees, some ten feet east of the center line of the alley, as it had been run under the direction of the board. Whilst engaged in this removal, or subsequently to its accomplishment, the plaintiff filed his complaint against the defendants, asking that they be enjoined from interfering with, injuring or removing his buildings; that they be required to pay him his damages for the loss and injury sustained by means of their unlawful acts, and that they be perpetually enjoined from further interference with the property of the plaintiff. The damages occasioned by the removal were shown to be about the sum of thirty dollars.

It is conceded that the plaintiff is the owner of lot No. 39.

Clements agt. The Village of West Troy.

If the public have not acquired a right of way, or passage in the rear of that lot, then its rear boundary is the center line of the pretended alley; and the defendants, in removing his buildings, and attempting to regulate, control and appropriate the ground as a public passage way, have unlawfully interfered with his inheritance, and should probably be enjoined from further interference.

It is not claimed that the board of trustees of the village of West Troy, acting as commissioners of highways, within the corporate limits, have ever formally taken the steps pointed out by statute, for laying out and opening the alley in controversy, as a public highway. But the defendants contend that it is a highway, by dedication of it to the public use by the original proprietors; and, being so, the trustees are empowered to regulate and improve it. Their power to enter on and improve the alley, and for that purpose, even to remove the plaintiff's buildings, is undoubted, if a right of way through or over it has been dedicated to the public. I confess that I think the evidence of dedication of the alley to the public use, by the original proprietors of the land, abundant and complete. In 1828, the then owners of the land, surveyed and mapped the plot of ground, divided it into village lots, and located streets and alleys upon it. The strip of ground in controversy in the proprietors' survey, was laid down and described as an alley, and all the lots on two parallel streets, (Rochester and Champlain,) as marked on the map, were bounded on this alley. The proprietors, in a subsequent partition of the lots amongst themselves, as early as 1829, recognized the survey, and conveyed to each other, according to the descriptions of the lots in the field-book. Hart, one of the proprietors, to whom lot No. 39 had fallen, conveyed it, in 1833, to one Marshall, and, in the conveyance, bounded it upon the alley. The south part of the alley has always been opened and worked; and in no part, since the plotting of the ground by the original proprietors, has been wholly obstructed. The public have assumed to use a part of the alley as a public way, and the remainder, where there were no enclosures or erections, has been

Clements agt. The Village of West Troy.

. commonly used as a depository for lumber. These acts of the original proprietors amounted to an *immediate* dedication of the easement, or right of way to the public, over the strip of ground designated, and set apart by the owners of the land, as an alley. In case of an immediate dedication, or a dedication growing out of the positive acts of the owner, an immediate acceptance and use of the thing dedicated is not necessary, in order to secure the right of the public in it. In the case of *Wyman* agt. *Mayor of New York*, (11 *Wend. R.* 486,) the land was dedicated in 1817, and the corporation of ·New York delayed opening the street until 1829 ; yet, it was held that the dedication was absolute and complete, so far as the easement was concerned, and destroyed the fee, even so far as only to allow nominal damages therefor. Now, is it necessary, to establish the dedication of land for the purposes of a highway, to show that the public have been in the uninterrupted use of it for a length of time that would authorize the presumption of a grant of the easement ? The public cannot hold by prescription. The doctrine of prescription involves the presumption of a grant ; and, in the case of the public, there can be no grantee. The public may use, as a thoroughfare, the land of an individual for a period short of twenty years, with the assent of the owner of the soil, and a dedication of the public right of way may be presumed. In the case of *Jarvis* agt. *Dean*, (3 *Bingham*, 447,) where a street had been used as a public road only four or five years, but with the assent of the owner of the soil, a dedication was presumed ; such use, however, ought to be, as is said by Mr. Justice THOMPSON, in case of *City of Cincinnati* agt. *White*, (6 *Peters.* 431,) for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment. So, also, there may be a dedication of an easement to the public, by the direct, affirmative and unequivocal acts of the owner of the soil—an *immediate* dedication of the land for streets, and conferring upon the public the right to use the land for the purposes contemplated by the dedication whenever they shall deem it proper. The only question arising in relation to this

torm of dedication, where there has been no immediate public use of the thing, has been, as to the necessity of showing an acceptance, for the purpose of securing the protection of the public rights. Where there has been a dedication of an easement to the public, by the owner of the soil, the naked fee of the land remains in such owner, subject to the public use. This is so, in regard to all roads in the country, whether made public easements by being laid out in the mode provided by the statute, or by dedication. It is so in regard to the roads, streets and alleys within the corporate limits of West Troy. Neither the public nor the corporation of that village, in trust or otherwise, hold the fee of the soil appropriated for streets and alleys. It is otherwise in the city of New York. There, where the owner of the soil, by his own direct and positive acts, dedicates part of it to the public, as in the country, an easement or right of way vests immediately in the public; the mere naked fee remaining in the owner of the soil. But when the corporation of that city choose to open a street, thus dedicated to the public use, steps are required to be taken to vest them with the fee in the soil of the street. Where there has been a dedication to the public of a street, it is to be taken, without compensation for the right of way, whenever the corporation choose to open it. I do not understand that the corporation are to do any thing to complete the *dedication* to the public of a right of way; and this was substantially held in the case of *Wyman* agt. *Mayor of New-York*, (11 *Wend.* 486.) That case rests upon the principle of an *immediate* dedication to the public of a right of way; and which was complete in itself, so far as passing the easement, without any acceptance on the part of the corporation.

Had this been otherwise, and there was no dedication to the public use until the same was ratified by the corporate authority, I see not why, in that case, the public were not held to compensate the owners for the full value of the soil of the street, as though the public had no easement in it, instead of a mere nominal compensation for the naked fee.

When this case was at special term, on a motion to dissolve the preliminary injunction, the learned justice held, that there

had ·been no dedication of the use of the alley to the public—the dedication being incomplete, not having been accepted. And he went further, and substantially held, that the only way of evincing an acceptance was by opening and laying out the alley in the mode prescribed by law for laying out and opening highways. (16 *Barb.* 251.) To sustain this position, the cases he relied on all arose in the city of New York, and grew out of proceedings on the part of the corporation to open the street and *acquire the fee.*

But, even as I understand those cases, they do not hold the dedication of a right of way to the public by the owner of the soil to be incomplete, until proceedings are taken by the corporate authorities for assessing the value of the fee in the soil, and opening or laying out the street. Nor, to the full length of the remark of the judge, do I think "it assumed in all those cases that the mere dedication of a street to public use does not make it a public street until the dedication is ratified by the public authorities. The same proceedings must be had for opening or laying out such street, as if there had been no dedication." If, by the term " public street," is meant a thoroughfare brought under the exclusive control of the municipal authorities, and in the soil of which they hold the fee, I agree ; otherwise, not. If there can be no dedication of a right of way to the public without acceptance, and that acceptance is only to be evinced by the public authority opening and laying out the street or highway in the mode prescribed by law, is not the doctrine of dedication of a right of way to the public substantially overthrown both in city and country ? Is not the absurdity involved, that in the country, and even in the village of West Troy, the public could never acquire the right of way in a road, street, or alley, unless laid out and opened by the public authorities, or by operation of some statute or act of the legislature it is made a highway ? User by the public, with the assent of the owner of the soil, would not secure it, even though the owner, by the most direct and unequivocal acts, set apart his soil for the public travel ; yet, without action on the part of the public authorities, no right of way can be secured.

Clements agt. The Village of West Troy.

This seems to me to strike at the root of the principles on which the doctrine of dedication of land to public purposes rests. It would come to this, that in the village of West Troy (where the corporate authorities do not hold the fee in streets, nor as a corporation can lay out roads and streets but where the board of trustees act merely as *ex officio* commissioners of highways,) there could be no roads, streets, or alleys, except those laid out formally under the highway act, or that have been used as public highways for twenty years or more. (1 *R. S.* 513, 521, §§ 55, 100.) It has been truly said, that commissioners of highways have now power to *accept* a dedication made by use, or by express and direct acts of the owner of the soil. It is only when the use has been twenty years or more, that these statutes make the road a public highway, without a survey, or order, or record, by the commissioners. In West Troy, where the use has been less than twenty years, or where, by the positive acts of the owner of the soil, there has been what is claimed to be a dedication to the public, ripening into a right immediately, or by use less than twenty years, there is no public authority having the power to accept or ratify dedication in any other way than by proceeding under the statute to lay out the road, making a survey, order and record; which amounts virtually to an overthrow of the doctrine of dedication, except, perhaps, in the single case of a use for twenty years; and there it rests, not upon any acceptance or ratification by the public authorities, but on an express provision of the statute. I think that the ordinarily astute judge, who heard this case in part on the motion to dissolve the preliminary injunction, and in the assumption that the doctrine of dedication of a right of way to the public rested at all on the action of the public authorities, was mistaken. In the city of New York the dedication may be, and is, complete without action on the part of the corporation. In the country, the commissioners of highways can do nothing to complete a dedication. Lands may be dedicated to public use for roads or streets without their action, or it cannot be at all. Commissioners have no power to accept dedications; they can do nothing but lay out

roads in the mode prescribed by statute. Where there has been no formal laying out of a road, and there has been a public user of it for twenty years' or more, the statute declares it a highway. The commissioners are to do nothing to complete the dedication, if it may be called one. If the user be for less than twenty years, or if the soil be set apart to the public use by the positive and unequivocal acts of the owner, what can they do to complete the dedication of a right of way? Nothing. They are powerless to do any thing by way of ratifying the dedication, or accepting for the public the thing dedicated. They may lay out the road, if it be through improved lands, provided a jury certify as to its necessity, and the public pay the damages for the easement. Nothing more. I am not willing to subscribe to a doctrine which, in the village of West Troy and other villages of the state, practically leads to the result, that there can be no such thing as a dedication by the owner of his soil to the public for streets and alleys; at least, that there must be a use for twenty years or more. It inevitably comes to this; if the trustees, as commissioners of highways, must accept or ratify a dedication, they must act affirmatively to complete it. They have no power to accept the gift, as such. Their powers are circumscribed by the statute. In this case, the board of trustees, acting as commissioners of highways, as early as 1837 did all they could to accept and ratify the dedication, short of actually laying out and opening the alley as a highway. But they possessed no power, as commissioners, to do anything but the latter; and, if the question of dedication of a public right of way depended at all upon their affirmative action as such, then, though the owners of the soil, in the most direct and unequivocal manner, devoted the alley to the public use, and the public have in fact used it in part for the purposes of a highway for nearly or quite twenty years, no public right of passage has been secured. It is no highway. There has been no dedication—no proper ratification by the public authorities—and no person or body, corporate or otherwise, competent to do any act in affirmation of the act of the owners of the soil. It is true that the trustees, as commis-

sioners, might have proceeded to open and lay out the alley in the mode prescribed by law, but they would have acted rather in hostility to the owners of the soil, than in the affirmation of their acts.

Upon the principle that there can be no dedication of a right of way to the public without action on the part of the public authorities, it is probable that in West Troy, not only across the disputed alley, but in many of the streets of that thriving village, the public have yet to acquire an easement or right of passage. It is quite probable that this remains yet to be done, so far as relates to the thoroughfares designated as Rochester and Champlain streets, on the map and survey of the original proprietors.

I do not understand that, in the dedication of a right of way to the public of an alley, street, or road, any person or body clothed with authority is to take an affirmative action to give effect to such dedication. The right results from use by the public, with the consent of the owner of the soil, or by express and positive action of such owner, devoting or yielding the easement to the public. The owner of the land cannot by deed convey the easement to the public, but his acts may be of such a nature that, although he holds the title in the soil, he is estopped from controverting the public right. This right is not acquired or secured, nor does it depend for its protection on any person or body acting officially.

The original proprietors of the soil of the alley in controversy, devoted it to the public use with as much directness and solemnity as they did Rochester and Champlain streets. In express terms, they said to the purchasers of lots on Champlain and Rochester streets, and to the public, we set apart as a public passage way twenty feet in width of our soil between Champlain and Rochester streets; we have divided our land into lots, bounded the lots upon those streets in front, and upon this alley in the rear; and we have conveyed to each other by deeds, recognizing the act of setting apart the alley for the public use. More than this, they have sold and conveyed lots fronting on Rochester street, bounding them on this alley.

Clements agt. The Village of West Troy.

The plaintiff's lot was thus conveyed by the original proprietors; and for a series of years, perhaps over twenty, the public have used and worked part of the alley. Its use has kept pace with the growth of the village, and the public necessity. If this does not establish a case of dedication, I have misapprehended the principles of the leading cases on the subject. If this alley has not been dedicated to the public use, then has neither Champlain or Rochester streets; nor can we hardly conceive of a case where the owner of land may be estopped by his own acts from controverting a right deliberately and solemnly yielded up.

There being a dedication of the alley to the public use as a highway, the plaintiff's buildings were encroachments thereon. The defendants, in the exercise of the power conferred on them to regulate and improve the streets, lanes, and alleys of the village, could rightfully remove them. In doing this, they strictly followed the directions in their amended charter. Indeed, if the alley be a public highway by dedication or otherwise, I do not understand the plaintiff's counsel as seriously controverting the authority of the defendants to remove the buildings. But, whether controverted or not, the alley being a public thoroughfare, the plaintiff has failed to establish a case entitling him to the relief demanded in the complaint.

The complaint must be dismissed, with costs.