THEODORE F. H. MEYER, Appellant, v. HIRAM PHILLIPS et al., Respondents.

As to whether the public can acquire by prescription an easement to use a private stream for floating logs or for any other purpose, *quære*.

In an action to restrain defendants from floating saw-logs in the waters of a stream running across plaintiff's land, it appeared that for thirty years the stream had been so used by a few persons, not over twelve in all, and generally not more than three or four persons so used it in any one year, and the user was only for about six days in any one year, and some years not more than three. *Held*, that even if an easement in the public could be acquired by prescription, such a use as existed here could not confer such right.

It appeared that defendants threatened to float a large number of logs over plaintiff's lands, using the stream and its banks for that purpose, and that by so doing some damage would be done to the banks and other lands of plaintiff; also that defendants claimed a right in the public to so use the stream, and asserted that they would exercise it whenever they chose. *Held*, that the facts authorized equitable interference to quiet plaintiff's title, settle his rights, and prevent the threatened injury.

Also *held*, that in such a case all parties asserting the common right might properly be joined as defendants.

Also *held*, that as plaintiff, when he commenced the action, had the right to maintain the same, he could not be defeated by the fact that afterward the logs were floated down the stream; that plaintiff's right could be settled and damages awarded.

(Argued November 24, 1884 ; decided December 9, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made the first Monday of May, 1882, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain defendants from floating saw-logs across plaintiff's lands on the waters of North-west Bay creek, a private stream flowing through said lands, and to settle the rights of the plaintiff and the public in said stream.

The facts sufficiently appear in the opinion.

*Nathaniel C. Moak* for appellant.  A stream, such as the one in question has been proven to be, is not navigable.  (*Morgan* v. *King*, 35 N. Y. 454.)  A non-navigable stream is wholly private property and the public has no rights therein.  (*Morgan* v. *King*, 35 N. Y. 454; *Munson* v. *Hungerford*, 6 Barb. 265; *Curtis* v. *Keesler*, 14 id. 511; *Smith* v. *Rochester*, 92 N. Y. 473.)  The spasmodic use at intervals by a few individuals cannot deprive it of its character of private property or confer upon the public any rights.  (Angell on Water-courses, § 539; *Treat* v. *Lord*, 42 Me. 552; *Brown* v. *Chadbourne*, 31 id. 9; *Wadsworth* v. *Smith*, 11 id. 278; Gould on Water-courses, §§ 43, 46.)  The public can never acquire rights by prescription. (*Munson* v. *Hungerford*, 6 Barb. 265; *Clements* v. *Village of West Troy*, 10 How. Pr. 199; *Neill* v. *Duke of Devonshire*, 8 App. Cas. 135, 154–6, 170–1, 190–4; *Munson* v. *Hungerford*, 6 Barb. 265; *People* v. *Platt*, 17 Johns. 195; *Morgan* v. *King*, 35 N. Y. 454.)  The public cannot even by dedication acquire such rights as are insisted on by the defendants.  (*Morgan* v. *King*, 35 N. Y. 454; *Munson* v. *Hungerford*, 6 Barb. 265; *Curtis* v. *Kessler*, 14 id. 511; *Prentice* v. *Geigher*, 74 N. Y. 341; *Haight* v. *Price*, 21 id. 241.)  To sustain the theory of a right by prescription, it was necessary for the defendants to affirmatively prove that they had either themselves by user, acquired rights as against the plaintiff and his grantors, or had succeeded through their grantors to such rights.  (*Prentice* v. *Geigher*, 74 N. Y. 341, 347; *Tallmadge* v. *East River Bridge*, 26 id. 105.)  The doctrine of dedication by mere user does not extend to a right of landing from even a navigable stream.  (*Post* v. *Pearsall*, 22 Wend. 425; affirming 20 id. 111; appealed and followed in *Munson* v. *Hungerford*, 6 Barb. 265; *Morgan* v. *King*, 35 N. Y. 454; *Hooper* v. *Hob-*

*son,* 57 Me. 273 ; *Morgan* v. *Reading,* 11 Miss. [3 S. & M.] 366 ; *The Magnolia* v. *Marshall,* 39 Miss. 110–136; *Brown* v. *Chadbourne,* 31 Me. 25 ; *Post* v. *Pearsall,* 22 Wend. 425 ; Ct. of Errors affirming 20 id. 111 ; *Whittaker* v. *Burhans,* 62 Barb. 237 ; *Brink* v. *Richtmyer,* 14 Johns. 255 ; *Cortelyou* v. *Van Brundt,* 2 id. 357 ; *Duncan* v. *Sylvester* 24 Me. 482 ; *Chestnut Hill, etc.,* v. *Piper,* 77 Penn. St. 432 ; *Wiseman* v. *Lucksinger,* 84 N. Y. 31–44; *Burnham* v. *McQuestin,* 48 N. H. 451 ; *Root* v. *Commonwealth,* 98 Penn St. 170 ; *Rooker* v. *Perkins,* 14 Wis. 79 ; *Hoag* v. *Delorme,* 30 id. 591 ; *Sweeney* v. *St. John,* 28 Hun, 634 ; *Post* v. *Pearsall,* 22 Wend. 440 ; *Meill* v. *Duke of Devonshire,* 8 App. Cas. 156 ; *Steele* v. *Houghton,* 1 H. Bl. 60.) The plaintiff was entitled to an injunction to restrain defendants from rafting logs in the stream over his lands, and subjecting them to the probable destruction of its banks and the carrying away of the soil. (*Holsman* v. *The Boiling Spring Bleaching Co.,* 14 N. J. Eq. 335 ; Angell on Water-courses, § 449 ; *Corning* v. *Troy Iron and Nail Factory,* 40 N. Y. 191 ; *Sanborn* v. *Covington Co.,* 2 Md. Ch. 409 ; *Gillespie* v. *Forrest,* 8 Hun, 110 ; 2 Story's Eq. Jur., § 927 ; *Lane* v. *Newdigate,* 10 Ves. 193 ; *Chalk* v. *Wyatt,* 3 Meriv. 688 ; *Wahle* v. *Reinbach,* 76 Ill. 323 ; *Commonwealth* v. *Pitts. and C. R. R. Co.,* 24 Penn. St. 160 ; Angell on Water courses, § 449 ; *Beach* v. *Elmira,* 22 Hun, 158 ; *Campbell* v. *Seaman,* 63 N. Y. 518 ; *Penn. Coal Co.* v. *Saunderson,* 49 Penn. St. 302 ; *Henderson* v. *N. Y. C.,* 78 N. Y. 423 ; *Fox* v. *Fitzsimmons,* 29 Hun, 578 ; *Tribune Association* v. *Sun,* 7 id. 175 ; *Hallock* v. *Scheyer,* 19 N. Y. Weekly Dig. 372 ; *Pennington* v. *Brinsop Hall Coal Co.,* L. R., 5 Ch. Div. 729 ; 4 Eng. Rep. 450 ; *Brown* v. *Ashley,* 13 Nev. 311 ; *Clowes* v. *Staffordshire,* L. R., 8 Ch. 125, 143 ; 4 Eng. Rep. 807 ; *Goldsmid* v. *Tunbridge Wells, etc.,* L. R., 1 Ch. 349 ; *Crossley* v. *Lightowler,* L. R., 2 Ch. 478 ; L. R., 3 Eq. 279 ; *Harrop* v. *Hirst,* L. R., 4 Ex. 43 ; *Campbell* v. *Seaman,* 63 N. Y. 568; *Shields* v. *Arndt,* 4 N. J. Eq. 234; *Swindon Water-works* v. *Wilts,* 14 Eng. Rep. 100 ; *Clowes* v. *Staffordshire Potteries,* L. R., 8 Ch. 142 ; 4 Eng. Rep. 420 ;

*Goldsmid* v. *Tunbridge Wells, etc.,* L. R., 1 Ch. 354; *Imperial Gas-light Co.* v. *Broadbent,* 7 H. L. 612; *Holsman* v. *Boiling Spring, etc.,* 14 N. J. 335; *Hallock* v. *Scheyer,* 26 Daily Reg. 265; 19 Weekly Dig. 372; *Clausen, etc.,* v. *B. & O. Tel. Co.,* VAN BRUNT, J., July, 1884, MS.; *Dusenberry* v. *Mutual, etc.,* 11 Abb. N. C. 440; *Metropolitan, etc.,* v. *Colwell,* 67 How. Pr. 365; *Mattlage* v. *N. Y., etc.,* id. 232.) It makes no difference that the damages are small. ( *William* v. *Western-U. Tel. Co.,* 49 N. Y. Sup. Ct. 140; *Schenck* v. *Ingraham,* 5 Hun, 397; *Crooker* v. *Bragg,* 10 Wend. 260; *Corning* v. *Troy, etc.,* 34 Barb. 485; 39 id. 311; affirmed, 40 N. Y. 221; *Hammond* v. *Fuller,* 1 Paige, 197; *Godson* v. *Richardson,* 8 Eng. Rep. 835; L. R., 9 Ch. 221; *Clinton* v. *Myers,* 46 N. Y. 511; *Foster* v. *City of Buffalo,* 64 How. Pr. 127; *Mineaton* v. *General Sewage Co.,* L. R., 20 Eq. 127; *White* v. *Carmathen R. R. Co.,* 1 Hem. & M. 786; *Burt* v. *British, etc.,* 4 De G. & J. 158; Kerr on Inj. 548; *Burt* v. *Woods,* 37 N. Y. 317; 38 Barb. 181; *Lyde* v. *Eastern, etc.,* 36 Beav. 10; *Dance* v. *Goldingham,* 7 Eng. Rep. 461; L. R., 8 Ch. 902.) Plaintiff's remedy at law is inadequate. (Kerr on Inj. in Eq. 200; 3 Pom. Eq. Jur., § 1357, note 1; *Woodyear* v. *Shaefer,* 57 Md. 1; *Corning* v. *Troy Iron and Nail Factory,* 40 N. Y. 191; *Curtis* v. *Keesler,* 14 Barb. 511.) It has always been the aim of a court of equity to prevent by injunction a multiplicity of suits. (Story's Eq. Jur., § 518; Redfield's ed. 502; High on Inj., §§ 459, 256; *Belknap* v. *Trimple,* 3 Paige, 577.) In a case like the present an injunction should always be granted, because there is an absolute destruction of parts of the freehold, which plaintiff has a natural right to have and enjoy in its ancient and natural state, and because there is an interference with a *publici juris,* inseparable from the inheritance. (2 Sto. Eq. Jur., § 860; *Livingston* v. *Livingston,* 6 Johns. Ch. 497; *Corning* v. *Troy, etc.,* 40 N. Y. 221; *Schutz's Appeal,* 35 Penn. St. 88; *Lynn* v. *McLaughlin,* 32 Vt. 423; *Gibson* v. *Smith,* 2 Atk. 182; *Moore* v. *Massine,* 32 Cal. 590; *Kerlin* v. *West,* 4 N. J. Eq. 449.) A court of equity will interfere by injunction to quiet plaintiff's possession and enjoyment. (*Curtis* v. *Keesler,* 14

Barb. 511; *Finch* v. *Resbridger*, 2 Vern. 390; *Hart* v. *Mayor, etc.*, 3 Paige, 213; *Holden* v. *Trustees of Village of Cold Spring*, 21 N. Y. 474; *Wetmore* v. *Story*, 3 Abb. 262; *Livingston* v. *Livingston*, 6 Johns. Ch. 497; *Hanson* v. *Gardiner*, 7 Ves. 305; *Mayor, etc.*, v. *Pilkington*, 1 Atk. 282; *N. Y. P. & D. Co.* v. *Fitch*, 1 Paige, 97.) The defendants were properly enjoined. (*Belknap* v. *Trimble*, 3 Paige, 577; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 N. Y. 592; *Foot* v. *Brownson*, 4 Lans. 47; *Brady* v. *Weeks*, 3 Barb. 157; *Peck* v. *Elder*, 3 Sandf. 126; *Brett* v. *First, etc.*, 5 Hun, 149; *Gillespie* v. *Forrest*, 18 id 110; *Emery* v. *Erskine*, 66 Barb. 14; *Varick* v. *Smith*, 5 Paige, 137; *Dimmock* v. *Bixby*, 20 Pick. 377; note 15 Am. Dec. 428; *Woodruff* v. *N. Bloomfield, etc.*, 8 Saw. 628; *Hillman* v. *Newington*, 57 Cal. 56.) The alleged misjoinder appearing on the face of the complaint, and the defendants not having demurred but answered, they waived the objection, and it was not available at the trial. (Code of Civ. Pro., § 488, subd. 7, § 499.)

*L. H. Northrup* for respondents. The defendants were improperly joined. (Code of Civ. Pro., § 448.)

EARL, J. It is not claimed that the North-west Bay brook is in its nature, under common-law rules, a navigable stream, and that as such the defendants have any rights therein; nor is it claimed that they have any private right to use the stream by prescription, as they and those under whom they hold had not used it for any purpose for the time and in the manner required to gain a prescriptive right. But the claim is (and so it was held at the trial term) that the public had acquired a prescriptive right to use the stream for floating logs, and that these defendants, therefore, as portions of the public, and in the rights of the public, had the right to use the stream and its banks for the purpose named.

We do not deem it important now to determine, and we do not decide, whether or not the public can acquire, by prescription, an easement to use any stream for floating logs or any

other purpose. The question has been considered in several cases in this State. (*Shaw* v. *Crawford*, 10 Johns. 236; *Munson* v. *Hungerford*, 6 Barb. 265; *Curtis* v. *Keesler*, 14 id. 511; *Clements* v. *Village of West Troy*, 10 How. Pr. 199; *Post* v. *Pearsall*, 22 Wend. 425.)

Even if user could give a prescriptive right to the public there was no such user here as could give such a right. The public generally have never used and could never use this stream. In the whole thirty years covered by the evidence it does not appear that as many as a dozen different persons used the stream for floating logs, and generally not more than three or four different persons used the stream in any one year; and the user did not exceed about six days in any year, and some years not more than three. The stream is less than five miles long, two of which are through plaintiff's lands. Such a stream, capable of being used by a very limited number of persons, is not adapted to a public use, and such a use as existed here could not confer a public right which could be enjoyed by the public at large.

The cases above cited show that there could be no claim that this stream had been dedicated to the public use, and indeed such a claim has not been made.

It is, therefore, entirely clear that the defendants had no right to float logs down this stream through the lands of the plaintiff.

But it is claimed that the facts of this case did not authorize equitable interference or sustain the jurisdiction of an equity court, and it is upon this ground that the General Term affirmed the judgment of the Special Term. The defendants threatened to float a large number of logs over the plaintiff's lands, using the stream and its banks for that purpose, and they would thus do some damage to the banks of the stream and other lands of the plaintiff. They would occupy the stream for several days. Not only this, they claimed the right to float the logs, and asserted, in substance, that they would do so whenever they chose to. By continuing to exercise the right they might, by lapse of time, be able to prove and establish

a right by prescription. They not only claimed a right for themselves but for the public — for everybody. That in such a case, upon such facts, a plaintiff may maintain an equitable action to quiet his title and settle his rights and prevent the threatened injury is abundantly settled by authority. (Angell on Water-courses, § 449; 2 Story's Eq. Jur., § 927; 3 Pomeroy's Eq. Jur., § 1351; *Holsman* v. *Boiling Spring Bleaching Co.*, 14 N. J. Eq. 335; *Campbell* v. *Seaman*, 63 N. Y. 568; *Johnson* v. *City of Rochester*, 13 Hun, 285; *Swindon Water-works Co.* v. *Wilts. & Berks. Canal Co.*, L. R., 7 H. of L. 697; L. R., 9 Ch. App. Cas. 451; *Clowes* v. *Staffordshire Potteries*, 8 id. 125, 142; *Goldsmid* v. *Tunbridge Wells Improvement Commissioners*, L. R., 1 id. 349, 354.)

This is not a case where the defendants threatened only to commit a single trespass, but they threatened to commit, and claimed the right to repeat, the trespass every year. Here a preventive action was proper to prevent an irreparable injury within the meaning of the equitable rule, and also to avoid a multiplicity of suits.

The defendants were properly united. They claimed a common right hostile to the plaintiff. They asserted a public right common to many. In such a case all the parties asserting the common right may be united as defendants in an action by one who seeks to overthrow the common claim, and establish his right against all claimants. (*Varick* v. *Smith*, 5 Paige, 137; *Dimmock* v. *Bixby*, 20 Pick. 368, 377; *Woodruff* v. *North Bloomfield, etc.*, 8 Sawyer, 628; *Hillman* v. *Newington*, 57 Cal. 56.)

As the plaintiff, therefore, when he commenced this action had the right to maintain the same upon the facts then existing, he could not be defeated, because, since the commencement of the action, the logs had been floated down the stream. The court having acquired jurisdiction should retain it to administer complete justice. The real importance of the action still remains, to-wit, the defendant's right. That may be settled, and the damages sustained by floating the logs may be awarded to the plaintiff.

We are, therefore, of the opinion that the judgments of the Special and General Terms should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.