(17 App. Div. 279.)

## HINCKEL v. STEVENS.

(Supreme Court, Appellate Division, Third Department. May 18, 1897.)

1. INJUNCTION—TRESPASS—ADEQUATE REMEDY AT LAW.

An injunction against trespasses on real estate should not be denied on the ground that plaintiff has an adequate remedy at law, where defendant's acts were committed under a claim of right, and she threatens to repeat them.

2. EQUITY—JURISDICTION—LEGAL TITLE OF PLAINTIFF.

A separate action to settle the legal title to real estate is not necessary before equitable relief may be sought against trespasses thereon, but the title, if in dispute, and the equitable remedy, may be determined in the same action.

Appeal from special term, Albany county.

Action by Frederick Hinckel against Jennie B. Stevens. From an order vacating a preliminary injunction, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Scherer & Downs, for appellant.

Ward & Cameron, for respondent.

LANDON, J. The plaintiff's paper title to the stream in question upon the locus in quo seems to be clear. It is derived from Stephen Van Rensselaer, who, by a perpetual lease dated October 24, 1831, demised 352 acres, embracing the premises through which the stream runs, to Elizabeth and Thomas Hun, excepting and reserving therefrom to himself, heirs, and assigns this stream and the soil under it, and the privilege of erecting mills and milldams and other constructions for the use thereof as he or they might think proper, and also such part of the land as might by said dams be overflowed with water, and also the right of free ingress thereto and egress therefrom. Van Rensselaer conveyed the property and easements thus reserved and excepted to his son, March 13, 1837, and the plaintiff has, through mesne conveyances from the son, acquired the reserved and excepted property and easements in the locus in quo. The defendant has by mesne conveyances acquired the property first demised. The Huns and their grantees conveyed the land to the center of the stream, and such is the deed to the plaintiff; but of course they could not convey any greater title than they held. 1 Rev. St. p. 739, § 143. The perpetual lease contained a clause that upon the use of the property and rights reserved a proportional abatement of the rent reserved should be made. On July 10, 1860, Orlando Meads executed a release of the rents reserved in the perpetual lease. The case does not show what right Meads had to make the release, but, assuming that he acquired title to the rents and to the right of reversion from the original landlord, yet, since the landlord had before the release parted with title to all interest in the property and easements reserved to himself, he could not, by releasing the rents reserved upon the land demised, impair his grantee's title to such property and easements upon which such rents were not reserved.

We can see where one person owns the land adjoining a stream, and another owns the stream, that disputes may arise after a lapse of years as to actual possession. But possession, in the absence of evidence to the contrary, follows the title, and in this case it is by no means clear that because the defendant and her grantors had possession of the land adjoining the stream, they also had possession of the stream itself; or, if they had possession, it was not a hostile possession, until so asserted. It is not clear from the affidavits upon the part of the defendant that she or her grantors have ever exercised any acts, other than the occupation of the adjoining land, indicating a claim of right to the stream in hostility to plaintiff's title, except the conceded acts of intimidation of plaintiff and his servants, and the arrest of the latter for obeying the plaintiff's orders, and defendant's threats of their repetition whenever plaintiff should again seek to exercise his right to gather the ice from the stream. The plaintiff and his grantors have since November, 1877, maintained a dam upon the stream, and since 1887, with the exception of one winter, have cut and removed the ice therefrom. This is a valuable right, and has sometimes been sold for $2,000 for one season, and defendant estimates its value at the same sum. The acts and threats of defendant in hostility to plaintiff's title were the immediate occasion of plaintiff's commencing this action. The action is brought to quiet plaintiff's title, and to establish his right to the enjoyment of his property, free from the vexations and annoyances of the defendant. It is not a mere demand for damages for trespass or for ice lost. The case is much like that of Meyer v. Phillips, 97 N. Y. 485. If the title to the stream and pond shall be in dispute, both the title and the equitable remedy can be determined upon the trial. Broiestedt v. Railroad Co., 55 N. Y. 220. It is no longer necessary first to settle the legal title in a separate action. Lacustrine Fertilizer Co. v. Lake Guano & Fertilizer Co., 82 N. Y. 486. The temporary injunction was issued in the discretion of the judge. It was vacated by the special term upon further affidavits, not in the discretion of the court, because full relief might be rendered upon final judgment, but upon the ground that the plaintiff had an adequate remedy at law. We do not think this is so. An equitable action is necessary to restrain the defendant from the trespasses and violence which she has threatened to repeat, damages for which the plaintiff could not recover in an action at law for past damages; and equity takes jurisdiction because one action is not so bad as a multiplicity of actions. The vacation of the injunction for the cause assigned seems to us to prejudice unduly the plaintiff's cause of action.

The order should be reversed, with costs, and motion to vacate denied, with $10 costs, but without prejudice to a renewal of the motion. All concur.