THE NEWAYGO MANUFACTURING ' COMPANY v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.[1]

*Equity—Deed of right of way—Reservation—Enjoining threatened injury to land.*

April 1, 1873, the Grand Rapids, Newaygo and Lake Shore Railroad Company was operating its road from Grand Rapids to Newaygo, and on that day secured from the owners of the water-power formed by damming the Muskegon river a deed of right of way over a parcel of land bordering on said river, and through which they had constructed a canal running from said dam to their saw-mill, by means of which they floated their saw-logs to the mill for manufacture. The land lying between the canal and river had been used by the grantors for many years as a private

[1]See *People v. Petheram, post.*

way to reach the dam, and for other purposes, and was reserved
in the deed for the free and uninterrupted use of the grantors,
their heirs and assigns, the meaning being declared to be that
the railroad company should have the privilege of building a
bridge over the reserved land, at such an elevation as not to
interfere with the grantors' business, and the right to use the
land for the purpose of constructing, repairing, and maintaining
said bridge and railroad.

The railroad company built a bridge spanning the canal and re-
served land, with piers so placed as to interfere with neither, and
used same until January, 1886, when, desiring to replace the old
structure with an iron bridge, the defendant, which had succeeded
to the rights of the original company, took forcible possession of
the mills and factories used by complainant, the successor of
the grantors of said right of way, in connection with said canal
and water-power, and attempted to lay the foundation for two
stone piers in said canal, to take the place of the old ones;
whereupon complainant filed a bill to perpetually enjoin such
erections, which relief was granted on the final hearing.

In affirming the decree the Supreme Court held:

1. All grants must be construed reasonably, and in the light of sur-
   rounding circumstances.     McConnell v. Rathbun, 46 Mich. 303.

2. The reservation in the deed extended to the grantee of the partner-
   ship making same, who succeeded to and enlarged their business.

3. Equity will enjoin a threatened injury to real estate if of such a
   nature as to materially lessen its enjoyment by the owner and
   his rights therein.

4. An encroachment on land which, if allowed to continue, will ripen
   into a title, will be enjoined by the equity court to prevent a
   multiplicity of suits.

5. Technicalities in equity may be resorted to when in no other way
   can the just rights of the parties be protected and preserved, but
   they are intolerable in any other case, and should not be allowed
   to control.

Appeal from Newaygo. (Fuller, J.) Argued November 3,
1886. Decided January 6, 1887.

Bill to enjoin a threatened trespass. Defendant appeals.
Decree affirmed. The facts are stated in the opinion.

*William D. Fuller,* for complainant:

The trespass complained of, if continued, will ripen into an easement, or may become the foundation of adverse rights, and occasion a multiplicity of suits to recover damages, which, from the nature of the case, will be irreparable, and cannot be satisfactorily measured in dollars and cents; hence the equity court will interfere:    1 High, Inj. § 702.

The grantee of a way is limited to use it for the purposes and in the manner specified in his grant.    He cannot go out of his way, nor use it to go to any other place than that described, nor to that place for any other purpose than that specified, if the use in this respect is restricted:    *French v. Marstin,* 4 Fost.  449; Washb. Easem. 186; *Mandeville v. Comstock,* 9 Mich. 539.

*Smith, Nims, Hoyt & Erwin,* for defendant:

Reservations in deeds to a railroad company are to be construed so as to adjust reasonably the rights of the grantor with the purposes and operations of the company:    Pierce, R. R. 134.

Injunction lies to restrain the commission of a threatened, irreparable injury, but the court will examine into all of the circumstances of the case, and, if the relief sought is disproportioned to the nature and extent of the injury, it will not interfere, but leave the parties to seek some other remedy:    *White v. Forbes,* Walk. Ch. 112; *Norris v. Hill,* 1 Mich. 210; *Briggs v. Withey,* 24 Id. 136; *Fox v. Holcomb,* 32 Id. 494; *Hall v. Rood,* 40 Id. 49.

Where the evidence in an injunction case is too vague and conflicting to warrant any decree designed to settle the rights in controversy, and the case is a proper one for a jury, the bill will be dismissed without prejudice:    *Jacox v. Clark,* Walk. Ch. 249; *Payne v. Paddock,* Id. 487; *Christ v. Kusterer,* 25 Mich. 354.

The court will not be governed by dollars and cents alone, but will inquire whether the injury is of such a nature that it can reasonably be supposed to materially lessen the enjoyment of the property by the owner:    *White v. Forbes,* Walk. Ch. 114; *Buchanan v. Grand River Log Co.,* 48 Mich. 368; *Bradfield v. Dewell,* Id. 9.

Upon the subject of legal and not equitable relief, see *Hoxsie v. Hoxsie,* 38 Mich. 77; *Edwards v. Allouez Mining Co.,* Id. 46; *Buchanan v. Grand River Log Co.,* 48 Id. 367, 368.

The right of way reserved on north bank of canal is too

indefinitely set forth to enable the court to protect it by injunction: *Fox v. Pierce,* 50 Mich. 500.

Ambiguity in a deed will be taken more strongly against the grantor, and its several parts must be construed together, and effect given to every clause if possible: *Norris v. Showerman,* Walk. Ch. 206; *Bird v. Hamilton,* Id. 361; *Erickson v. Michigan L. & I. Co.,* 50 Mich. 604; *Jacobs v. Miller,* Id. 126, 127; *Moran v. Lezotte,* 54 Id. 83 ; *Waldron v. T., A. A. & G. T. Ry. Co.,* 55 Id. 424.

The same rule applies where the right of way merely is conveyed, and the company takes the same rights as if secured by assessment under the statute: 1 Rorer, R. R. 416; *Preston v. D. & P. R. R. Co.,* 11 Iowa, 15 ; *Hougan v. M. & S. P. Ry. Co.,* 35 Id. 558; 1 Redfield, Railways, 219, 220, 222; Pierce, R. R. 133.

SHERWOOD, J.   On the first day of April, 1873, the Newaygo Company, then a copartnership, owned blocks A and B, in the village of Newaygo, and the canal and water-power thereon, formed by damming the Muskegon river at that point. The Newaygo Company and its assigns, at that time and ever since, have been using the water-power for the manufacture of lumber and for other purposes, the water-power being one of the largest in the State, and the company owning it has done a constantly increasing business.

At the time mentioned, the Grand Rapids, Newaygo & Lake Shore Railroad was in operation to the village of Newaygo, and the railroad company, desiring to extend its road to the village of White Cloud, and the route selected passing over blocks A and B belonging to the Newaygo Company, they, for a nominal sum, sold and conveyed to the railroad company a right of way across said blocks for the use of its railroad. The deed is dated the first day of April, 1873. That portion of the deed needing special consideration in the case is the description and reservation, reading as follows:

"A right of way in and over a certain strip of land situate, lying, and being in the village and county of Newaygo, Michigan, and designated as a strip of land out of block 'A,' in said village, 60 feet wide, and lying 30 feet in width

upon each side of, and at right angles with, the center line of
said company's railroad, as staked out by John Manly,
engineer, over said block 'A,' and commencing at a point,
on the southern boundary of said block 'A,' 35 feet east of
the range line between townships twelve (12) north, range
twelve (12) west, and twelve (12) north, of range thirteen
(13) west, in said county, and running thence northerly, on
a curve of 717 feet radius, to the bank of the Muskegon
river.

"That portion of said land lying between the river and
the mill-race, over which said track passes, is reserved for the
free and uninterrupted use of said Newaygo Company, their
heirs or assigns, forever.

"The meaning is that the road shall have the privilege to
build a bridge, or approach to a bridge, over the portion of
said land above reserved, at such an elevation as not to inter-
fere with the usual business of the said Newaygo Company.
Said railroad company to have the right, at any time, to use
the ground here reserved for the purpose of constructing
said bridge, or approach thereto, or at any time to repair and
maintain said bridge, approach, and railroad.

"For the said party of the second part, and their assigns
and their servants and agents, to build, construct, and main-
tain a railroad in and over said strip of land, and at all times
freely to pass and repass by themselves, their servants, agents,
and employés, with their engines, cars, horses, cattle, carts,
wagons, and other vehicles, and to transport freight and pas-
sengers, and to do all other things properly connected with
or incident to the location, building, maintaining, and run-
ning of the said road, and to use the earth and other mater-
ials within said strip of land for that purpose."

On taking possession of the right of way thus granted, the
railroad company constructed its road over said block A, and
built a bridge over the canal for its track, keeping within the
limitations of the deed; and the complainant's bill of com-
plaint alleges that the Grand Rapids, Newaygo & Lake Shore
Railroad Company so used said right of way and said bridge,
so constructed, until it transferred its road and other property
to, and became consolidated with, the Chicago & West Michi-
gan Railway Company, the defendant in this suit.

The bill further avers that said defendant proposes to erect

a new bridge over said canal, in place of the first one, constructed of iron; that defendant proposes to erect, for the support of the same, two large stone piers placed in the canal in such manner as to greatly impede the flow of water to complainant's mills, thereby greatly injuring the complainant; that it would decrease the capacity of the canal about one-third, by leaving less than two-thirds of the free space therein used for the passage of water and logs to the complainant's mills.

The bill of complaint further avers—

" That finally, and on the morning of Sunday, the twenty-fourth day of January, 1886, said railway company sent a force of from 75 to 100 men to Newaygo, and took forcible possession of the property of your orator, and imprisoned its night-watchman by it employed, and thus prevented an alarm being given; that they took possession of the saw-mill, planing-mill, and other factories belonging to your orator, and, blocking the large wheel of the planing-mill, opened the gates of same, took out the slash-boards from the waste-weir in the saw-mill, and endeavored to raise the gates in said mill; also went up to the head-gates of the canal, and, using lumber belonging to your orator, and large quantities of hay brought by themselves for that purpose, shut the water out of said canal, greatly endangering the same, and freezing up some of the wheels in said mill, and also the pump used for fire protection, thus endangering the entire property of your orator to destruction by fire; that, during this time, others, acting under like orders, commenced shoveling earth out of coffer-dams into the canal to prepare a foundation for said piers; that your orator, acting through its proper officers, has forbidden the prosecution of said work, and notified said men that it would defend its legal rights in the premises, and finally succeeded in securing a cessation of said work after one pile had been driven."

At this time the railway company had sent a force of men with a pile-driver to drive piles for a foundation for said pro-posed piers in said canal.

Complainant further says:

" Your orator is informed, through its said president and other officers, that said railway company has only suspended .

work to arrange for a more powerful effort to renew and complete the same, and that it threatens to send a large force of men to Newaygo, and drive said piles in said canal, and erect said piers therein, in spite of all opposition; that, if said railway company is allowed to drive said piles in said canal, and erect said piers therein, your orator will sustain irreparable damage and loss, by being deprived of the free and unobstructed use of said canal for the flowage of water and floatage of saw-logs therein to its said mills and factories, and that the damages thus sustained will be incapable of full ascertainment in a suit at law, and that the wrong done will amount to a continuing trespass upon the rights of your orator; and that said Chicago & West Michigan Railway Company has no legal or equitable right to commit such acts, and thus injure and obstruct the business of your orator."

The bill prays that—

"The Chicago & West Michigan Railway Company, its officers, agents, and employés, may be restrained by an injunction issuing ' out of this court, and to it and them directed, from driving piles in the said canal so owned by your orator, as aforesaid, and from constructing piers for the approach to its said river bridge in said canal, or upon said piles, and from in any manner attempting so to do, and from in any manner obstructing the free and uninterrupted flow of water in said canal at the point where its said right of way and bridge now crosses the same, and from injuring the banks of said canal on said right of way by excavations therein,—all until the further order of this court,—and that said preliminary injunction may be made perpetual on the final hearing of this case, and that your orator may have such other or such further relief in the premises as the nature of its case may require, and as shall be agreeable to equity and good conscience."

The defendant filed its answer, in which most of the material facts are admitted, and justification thereof is claimed under the deed from the Newaygo Company. It claims it had the right to construct the bridge in the manner proposed and attempted.

The answer also claims and denies—

"That the right reserved by said deeds of right of way to the said Newaygo Company, which right was a mere right of

passage over said strip of ground, has passed to the said complainant, for the reason that, by its terms, it is expressly limited to the usual and ordinary business of the Newaygo Company as it existed at the time said right of way was granted, and for the reason that such reserved right wholly ceased and terminated when the said Newaygo Company ceased to do business as such; and the said defendant denies that the structure which it proposes and has planned to build across said canal and said strip of ground will constitute any infringement of the rights reserved under said deeds of right of way, even if they are now in full force and have passed to said complainant, or any infringement of the use of said canal or the banks, under said deeds."

Defendant avers that the stone piers project into the canal, one not exceeding three and one-half feet, and the other not more than three feet, and that the water-way in the canal, if said piers were completed, would not be obstructed by more than the projection of one of them.

The defendant admits that it sent a force of men to drive piles for a foundation for the piers in the edge of the canal, and would have continued the construction had it not been enjoined, believing it had the right so to do.

"And the defendant, further answering, denies that said complainant will sustain irreparable or any damage or loss by reason of the construction of said piers in said canal, either in diminution of water or in the use of the same for floatage of logs to its said mill; and avers that no damage whatever, of any kind or nature, will be sustained by said complainant by reason of the construction of the piers proposed to be built by said defendant; and denies that any wrong will be done by this defendant amounting to a trespass upon the rights of the said complainant; and avers that a necessity does exist for the construction of said piers in said canal."

The defendant also claims and insists that the complainant has not made out such a case as entitles it to any equitable relief, and prays the benefit of a demurrer.

The cause was heard, on pleadings and proofs, before Judge Fuller, who made a decree in accordance with the prayer of the bill.

We think the bill states grounds for equitable relief, and is not subject to the demurrer claimed. The grounds stated are also sufficiently specific.

It states that the complainant owns the water-power and canal, and that the present flow of water is no more than sufficient to carry the various mills and machinery now dependent upon it for propelling power; that the defendant, without right or authority, threatens, and has already commenced, to place two stone piers, large enough to support an iron bridge to be used for railroad purposes, extending out into the canal on either side, and diagonally across the same, 10 feet, and, for the purpose of erecting said piers and building said bridge, has taken forcible and violent possession of the complainant's property, deprived it of the use of its water-power and mills, and threatens to continue such possession until the bridge is completed; and that the complainant will thereby be deprived of the use of about one-third of the water-power and way, and the stability of the embankment of the entire canal will be endangered.

It would seem that such a state of facts ought to entitle the complainant to the equitable consideration of the court, and to that preventive remedy which a court of equity alone can grant. Substantially such is the case made by the bill; and, if these facts are true, a more flagrant violation of private rights, committed in open defiance of law and against the public peace, has seldom been brought to our attention in an equity pleading.

We now come to the merits of the case as presented by the record.

The first important question to be considered is, what is the true construction of the deeds under which the defendant claims the right of way over the premises of the complainant? If we examine these deeds under the rule recognized and approved by this Court in McConnell v. Rathbun, 46 Mich. 303, that "all grants must be construed reasonably,

and in the light of surrounding circumstances," we shall, I apprehend, have but little difficulty. The surroundings of the parties, and their expectations in regard to the future development and increase of business, and the probable necessity for an increase of power, which could only be obtained by the widening of the canal, and everything relating to the full enjoyment of the water-power to its largest extent, must have been contemplated and in the minds of the parties interested at the time the right of way was conveyed to the Grand Rapids, Newaygo & Lake Shore Railroad Company, in 1873. The Newaygo Company then owned in fee all the property necessary to enable it to develop the power to its fullest extent. It owned the entire power, and exclusive right of boomage and flowage along the banks of the Muskegon river for six miles up the stream, and the property was "bought for the purpose [as stated by one of complainant's witnesses] of the manufacturing business, with the intention of increasing it as fast and as much as the power of the river would warrant."

Newaygo county, at the time the right of way for the railroad was obtained, contained a large amount of valuable timber of nearly every variety, and of the choicest kinds, which, with the advantage of the almost unequaled water-power on the Muskegon to aid in its manufacture, made the property and water-right of the Newaygo Company, now in question, of the utmost importance and greatest value, not only to the owners, but to the railroad company itself, inasmuch as the early business of the road was very largely supplied from the lumber and other articles manufactured at the mills of the complainant.

These are some of the circumstances surrounding the parties at the time the conveyances of the right of way claimed by the defendant were made; and we do not think it was in the mind of either of them, or the agents who transacted the business for them, nor the intention of any of them, that the

water-rights of the complainant, or anything appurtenant thereto, which the complainant, or, rather, the Newaygo Company, believed to be necessary to the complete enjoyment of the fullest development possible of the said water-power, was to be surrendered to the use of the railroad company.

The question then arises, did the Newaygo Company make any such surrender in the conveyances made? Let us see for a moment what is the situation of the premises in question. The Muskegon river is a large, rapid stream, passing through Newaygo village nearly east and west. It runs nearly in a straight line the length of the canal, starting at the dam across the river. The canal runs from the dam parallel with the river below about 500 feet. The distance between the canal and the water in the river at the bottom of the embankment is about 70 feet. The embankment is about 20 feet wide on the top, and the north side of the embankment extends to the water in the river. The top of the embankment is, and always has been, used as a road. It is about 10 feet wide, and then begins to slope down on either side. This road or track is used by the company in repairing the embankment and the guard-gates and other works at the dam, and there is no other practicable way of reaching these gates and works. At this point the river runs west, and the right of way is located about one-third of the length of the canal west of the dam. The land between the canal and river is a made bank, and needs to be looked after frequently. Supporting an immense pressure from the water, its construction and usefulness can only be maintained by the most thorough and substantial work. The canal is used, not only for conducting the waters from the river to the company's machinery, but also for the purpose of floating logs and timber from the river to complainant's mills. From ten to twelve million feet now pass over this water-way annually in conducting complainant's business.

It also appears from the testimony that the most feasible

and practicable way of widening the canal is by extending it south.

These are some of the surroundings of the property in question, which must be taken into consideration in construing these conveyances, by which it is claimed this embankment, or middle ground, if it may be so called, was given up to the use and control of the railroad company, to such extent as its interests should from time to time require, by the old Newaygo Company.

When these surroundings are properly considered, it is impossible, it seems to us, to come to the conclusion that any such rights were intended to be included in the right of way conveyed. It is clear that the free, undisturbed, and exclusive use of the middle ground was as necessary and essential to the best interests of the Newaygo Company as was such use of the canal itself, and that the proper construction of the conveyances has been given by counsel for complainant; that, in whatever manner the defendant makes use of its right of way, it must in no way interfere with the complainant's free, unobstructed, and exclusive use of both the canal and the land lying between it and the river, except for the two purposes mentioned, viz. :

1. For the purpose of constructing a bridge, and approach thereto, of sufficient height over the canal and middle ground so as not to interfere with the complainant's business.

2. For the purpose of repairing such bridge, approach, and railroad.

—And, when so used by the defendant, it must be without injury to the property, rights, and business of the complainant.

We think the manner of constructing the first bridge, and the placing of the piers therefor,—the one on the north side in the river, and the other, on the south side, beyond the south bank of the canal,—and the fact that two members of the old Newaygo Company, viz., Mr. Wood and Mr. Lawrence, refused to make the conveyance of the right of way until the

location of these two piers was made and established as intended by the parties in the conveyance, and in which locations they have ever since remained until attempted to be changed by the present owner, very clearly indicate that the construction claimed by the defendant's counsel is not in accordance with the original purpose of the parties to the deed, nor with the construction they gave it.

We think the defendant had no legal ground whatever, without the consent of the complainant, to place the piers for the new bridge where the attempt was made to locate them.

It was of no consequence whether the complainant suffered damage or not by the proposed erections in the canal and middle ground, so far as the complainant's rights are concerned. It was the right and privilege of the complainant to have the use of the canal and its embankments free and unobstructed by the defendant's bridge; and the act of the latter, in its attempt to infringe that right, was nothing less than a willful trespass on the part of those participating, and they were properly restrained from proceeding further by the court.

It is unnecessary for complainant to invoke the aid of section 3323 of Howell's Statutes to secure its rights in this case. The complainant's title to the premises is sufficient for that purpose. We do not think, upon this record, that the defendant had any consent, legal or otherwise, from the complainant to do what was attempted by its agents and employés.

The rights reserved to the Newaygo Company from the right of way conveyed by the deeds were not limited to that company's use. That company was no more than a partnership composed of three individuals; but it was clearly intended, we think, and it is so stated in the conveyances, that they extended to their heirs and assigns, and complainant is now well entitled to use and enjoy the same to the same

extent that the old Newaygo Company could had it not conveyed the property.

We think it fully appears from the record in this case that the injury threatened, attempted, and restrained is of such a nature as to materially lessen the enjoyment of the property and rights of the complainant, and in such cases there can be no question but that the grievance becomes one of equitable cognizance, and the duty of courts is plain.   *White v. Forbes,* Walk. Ch. 113.

The encroachment complained. of by complainant, if allowed to continue, would eventually ripen into a title, and can only in this way be prevented without the necessity of bringing a multiplicity of suits (1 High, Inj. § 702); and as to damage being irreparable in such cases, see Washb. Easem. 243.

It is unnecessary to continue the discussion of the case further.   Suffice it to say, it is one of those cases where no technical rules of either pleading or construction can be properly applied.   Technicalities in equity may be resorted to when in no other way can the just rights of the parties be protected and preserved, but they are intolerable in any other case, and should not be allowed to control.

After a careful examination of the questions involved, we are of the opinion that the decree of the circuit judge is correct, and should be affirmed.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J. (*dissenting*).   I do not agree in the conclusions reached by the circuit court in this case.

When the defendant received a deed of the right of way over the land now owned by complainant, it gave a right to erect such bridges and other improvements as would belong to any railway had the land been condemned, except so far as modified by the terms of the grant.   The only reserve was in favor of a water-way then existing, and supplying

works also existing. I do not think this exception or burden can be enlarged at the pleasure of complainant. So far as its enlargement has been acquiesced in, defendant cannot now destroy it; and, had such been the effect of its action, I should concur in holding it illegal. But the piers which the defendant company proposes to erect leave a passage considerably wider than is furnished by other parts of the canal, and practically much more spacious than the entrance through which all logs are run in. I do not think there is any proof which authorizes the inference that the bridge, as contemplated, will be any hinderance whatever to any business now provided for by the canal. The possibility that it may some day or other be found desirable to enlarge it is not one of those things provided for in the grant, and cannot, I think, be imported into it. There is no such restriction on the right of defendant, which I think is absolute except as already suggested.

Had the grant been so limited as to leave it open to an inference that the complainant's business might be enlarged in the ordinary course of improvement, there would still be as great an equity in favor of the enlarged and improved condition of the railway as of the mills. Any agreement which would cut off a great public way from adaptation to its growing needs would be quite as unreasonable as the limitation of other enterprises in which public convenience is not subserved so directly. But I do not think the grant is open to any such construction.

Whatever may be thought of the methods resorted to in beginning the piers, they cannot destroy the legal right of defendant to build the bridge in a more quiet way, or justify a permanent injunction. I think complainant made out no case for the relief granted.