MICHAEL HAITSCH,

vs.

THOMAS DUFFY.

*New Castle, May 15, 1914.*

The owner of land on which a part of the building of an adjoining owner encroaches may remove the portion of the building constituting the encroachment, or sue for damages, or maintain ejectment.

The remedy by ejectment against an encroachment on land by the building of an adjoining owner is not full and adequate, as a verdict for plaintiff will not bar other actions by defendant, and the description of the premises is so indefinite that the plaintiff at his peril points out to the sheriff the land of which possession is to be given, and a Court of Chancery will therefore award a mandatory injunction to enjoin the continuance of the encroachment and compel a removal thereof.

A landowner is not deprived of his remedy against an encroachment by the building of an adjoining landowner because the encroachment was in existence when he bought his land.

Though a court of equity will always consider the equities between the parties, and under some circumstances balance convenience and injuries, or even deny equitable relief because a great injury will be done, with little or no benefit to complainant, questions as to relative convenience and injury do not properly arise on demurrer to a bill for a mandatory injunction, challenging the equity of the bill and the jurisdiction of the court.

Where an owner of two adjoining lots, one of which was subject to a mortgage, erected a building on the other lot, part of the wall of which was on the mortgaged lot, a subsequent owner of the mortgaged lot under a sale on foreclosure was entitled to a mandatory injunction to prevent the owner of the building from maintaining windows in such wall, and to compel their removal, in order that a permanent right to free access of light and air over his lot might not be acquired; and though this would probably be rendered unnecessary by the removal of the windows, the owner of the mortgaged lot was also entitled to an injunction to prevent the acquisition of easements of light and air.

BILL TO REMOVE A CLOUD FROM TITLE TO LAND. On

April 2, 1892, Thomas Duffy the defendant purchased a lot of land in the city of Wilmington, fronting on Front Street, adjoining a lot on the northeast corner of Front and Madison Streets, both of which lots extend in a northerly direction parallel with Madison Street to Christiana Street. Erected on the lot then acquired by Duffy was a two-story frame dwelling house. On April 30, 1892, Duffy purchased from Mary Quinby the corner property, consisting of a lot sixteen feet six inches wide on Front Street, with a one-story brick building erected thereon and a brick wall nine inches thick, a continuation of the easterly wall of the building, extending along the division line between the two lots to Christiana Street, which wall was entirely on the corner lot, and the easterly face thereof sixteen feet six inches from the easterly side of Madison Street. The consideration for said corner property was $4,200, $4,000 of which was paid by a purchase money mortgage to the grantor.

In the fall of 1894 and the spring of 1895, and while the owner of both lots, Duffy demolished the frame house standing on the first mentioned lot, and, after erecting another wall four inches thick immediately adjoining the wall already erected on the corner lot, thereby increasing the thickness of said wall to thirteen inches, erected a three-story brick building covering the entire lot. The westerly face of this wall, where not contiguous to the building on the corner lot, was fifteen feet nine inches from the easterly side of Madison Street, and, as alleged in the bill, nine inches of it was within the borders of the lot covered by said mortgage. In the westerly face of said wall Duffy erected twenty windows, portions of the frames of which and the cornice extended beyond the face of the wall. There was also a rain conductor fastened to this wall, which drains a portion of the three-story building onto the corner property.

In 1897 the mortgage on the corner property was foreclosed, and Mary Quinby, the mortgagee, became the purchaser thereof at the sheriff's sale, and by a deed of the sheriff she acquired the legal title to the land covered by the mortgage. Afterwards Mary Quinby died intestate, and in 1902 her heirs at law sold and conveyed said corner property to Michael

Haitsch, the complainant in this bill, it being described in the deed to him by the same metes and bounds as in the deed of Mary Quinby to Thomas Duffy, the mortgage of Duffy to Mary Quinby and the sheriff's deed to Mary Quinby.

By the bill the complainant asks that the defendant be perpetually enjoined from further asserting a right to air and light over the complainant's land, and enjoined perpetually from interfering with the erection of any structure by the complainant, even though such structure if erected would totally obstruct the windows in the wall of the defendant. Another prayer of the bill is that the defendant be perpetually enjoined from continuing the trespasses on the complainant's land by having the windows of the defendant project into the part of the wall which is exclusively on the complainant's land.

To the bill the defendant has filed a demurrer, challenging the equity of the bill and the jurisdiction of this court, and the cause was heard on bill and demurrer.

*William F. Kurtz*, for the complainant.
*Charles W. Bush*, for the defendant.

THE CHANCELLOR. It appears, in brief, that while owning two adjoining lots, A and B (lot A being subject to a mortgage made by the defendant), the defendant erected a brick wall, part of which, viz., nine inches thereof, is on lot A. and the rest, four inches, is on lot B. This wall is the outside wall of a three-story brick building, extending to the rear end of the lot. In the face of the wall there are twenty windows overlooking lot A, which had and still has erected on it a brick building only one story high and extending only part way back towards the rear of the lot. By legal proceedings under the mortgage on lot A the mortgaged premises were sold and conveyed to the mortgagee, and afterwards were sold and conveyed to the complainant. Having thus acquired the legal title to the mortgaged premises, the complainant now owns lot A, nine inches of which is occupied by a wall of the defendant's building. The title of the complainant to part of the land occupied by the building of the defendant is settled for the purposes of the

present consideration by the allegations of the bill and the admissions of the demurrer. It is clear that the wall is not a party wall, and even if it were a party wall the adjoining owner would not for that reason be entitled to maintain on the complainant's part of it windows extending to and beyond the westerly face of it and overlooking the lot of the complainant.

The case has two phases: One as to the rights of the complainant respecting the portion of the building which constitutes a physical encroachment and occupation of land owned by the complainant, and the other relates to the right of the complainant to relief to prevent the acquisition by the defendant of prescriptive rights over land of the complainant.

The legal and equitable rights of one who holds the legal title to land on which a part of the building of an adjoining owner is erected are well settled. Aside from any equities which would limit him in claiming and enforcing his rights, the complainant under such circumstances had several remedies. 5 *Pomeroy on Equitable Remedies*, §507, *p.* 851.

(1) He could have removed the portion of the building constituting the encroachment, and probably recover from the defendant the cost of making such removal. But in view of his other rights and remedies he is not called on to take this remedy, for in doing so he might injure the portion of the building on the defendant's land and the removal would involve an outlay of money, and besides he is entitled to the protection of the law. *Norwalk, etc., Co. v. Vernam*, 75 *Conn.* 662, 55 *Atl.* 168, 96 *Am. St. Rep.* 246.

(2) He could maintain an action at law for damages, or maintain ejectment, and by the latter process recover possession of the land, and, according to some cases, even if in so doing it be necessary for the sheriff under a writ of possession to take down the portion of the encroaching wall. *Pierce v. Lemon*, 2 *Houst.* 519 (1862); *Wachstein v. Christopher*, 128 *Ga.* 229, 57 *S. E.* 516, 11 *L. R. A.* (*N. S.*) 917, 119 *Am. St. Rep.* 381; *Butler v. Frontier Telephone Co.*, 186 *N. Y.* 486, 79 *N. E.* 716, 11 *L. R. A.* (*N. S.*) 920, 116 *Am. St. Rep.* 563, 9 *Ann. Cas.* 858; *Murphy v. Bolger*, 60 *Vt.* 723, 15 *Atl.* 365, 1 *L. R. A.* 309. And see note to 11 *L. R. A.* (*N. S.*) 917, and 1 *L. R. A.* 309.

According to the case of *Herr v. Bierbower*, 3 *Md. Ch.* 456, the right of a plaintiff in an ejectment suit does not include the removal of the encroachment, and in *Baron v. Korn*, 127 *N. Y.* 224, 228, 27 *N. E.* 804, it was said that the sheriff might not regard it as his duty to deliver possession by taking down the encroaching wall at the risk of injuring the other parts of the defendant's building.

While there may be a remedy by ejectment, it is not full and adequate in any real sense. A verdict for the plaintiff is not a bar to another, or other, actions by the defendant, and the description of the premises is so indefinite that the plaintiff at his peril points out to the sheriff the lands of which possession is to be given. 2 *Woolley on Delaware Practice,* §§1614, 1615.

(3) A mandatory injunction may be awarded by a Court of Chancery to enjoin the continuance of an encroachment and compel a removal thereof. *High on Injunctions,* §704; *Norwalk Heating Co. v. Vernam,* 75 *Conn.* 662, 55 *Atl.* 168, 96 *Am. St. Rep.* 246; *Lynch v. Union Institution, etc.,* 159 *Mass.* 309; *Harrington v. McCarthy,* 169 *Mass.* 492; *Pile v. Pedrick,* 167 *Pa. St.* 296, 31 *Atl.* 646, 647, 46 *Am. St. Rep.* 677; *Huber v. Stark,* 124 *Wis.* 359, 102 *N. W.* 12, 109 *Am. St. Rep.* 937, 4 *Ann. Cas.* 340; *Herr v. Bierbower,* 3 *Md. Ch.* 456; *Long v. Ragan,* 94 *Md.* 462, 51 *Atl.* 181.

In the case of *Pile v. Pedrick, supra,* the defendant intending to put a wall on his own ground, by mistake of a surveyor put parts of some of the foundation stones about one and one-half inches on land of the complainant, who refused to allow the defendant to enter and remove the encroaching stones. A mandatory injunction was awarded requiring the removal of the intruding stones within a reasonable time, even though to do so it was necessary to take down the whole of the defendant's wall. In this cited case the complainant alleged that the defendant was putting windows in his boundary wall, which wall was all on the defendant's land, and asked that they be removed, or closed up, but this prayer was ignored by the court.

In *Herr v. Bierbower, supra,* in sustaining the right to an injunction, the court considered that an encroachment by

building on another's land is not a mere trespass for which pecuniary compensation may be obtained in the ordinary course of law, for the complainant's estate is destroyed. The court considered that it was no answer to say that by suit in ejectment the complainant would recover possession of the land encroached upon, and would so get any wall or building erected on the land so recovered. The structure would still remain, and in order that the complainant be restored to the full use of his land it would be necessary that the wall, or structure, be removed.

This equitable jurisdiction is probably based not on the irreparable character of the damage by the aggression, nor to relieve the necessity for multiplicity of suits as if it were a continuous trespass. The right to a mandatory injunction to require the removal of an encroachment on land is based on the peculiar nature of the right invaded and the subject matter affected, viz., land. In Delaware equitable jurisdiction to enforce specific performance of contracts concerning land, and also to enjoin waste, or what is equivalent to waste, even though done by a trespasser, is based, according to the statements of the courts, on the peculiar nature of the property affected, and this is naturally and logically the basis of the right to enforce restoration of possession free from encroachments. 5 *Pomeroy on Equitable Remedies*, *p.* 823; *Thomas v. Oakley*, 18 *Ves. Jr.* 184.

Is the complainant estopped to enforce his rights, or has he lost them by reason of acquiescence or laches? There is certainly no reason for applying either of these barriers to equitable relief in this case. It does not appear that the complainant when he purchased his lot had knowledge of the encroachments. He may perhaps be chargeable with notice of the existence of overlooking windows, and as to them, perhaps, the principle of *caveat emptor* would apply as between him and his vendor. But no authority has been found which holds that one is deprived of his remedy against an encroachment because it was in existence when he bought the premises encroached on.

In the case of *Norwalk v. Vernam*, 75 *Conn.* 662, 55 *Atl.*

168, 96 *Am. St. Rep.* 246, the complainant was granted a man-
datory injunction against the continuance of a large structure
found to be an encroachment, though it was erected before he
became the owner of it, and the fact was not alluded to in the
argument of counsel, so far as appears in the report, or in the
opinion of the court.

There is at this time no proper basis to consider the rela-
tive convenience and injury to the parties. The court will
always consider the equities between the parties, and under
some circumstances, a court of equity will balance convenience
and injuries, and even under some circumstances deny equit-
able relief because a great injury will be done to the defendant
by a mandatory injunction with very little or no benefit to the
complainant. On this demurrer, however, these questions do
not properly arise, the question being whether by his bill the
complainant shows he is entitled to the relief asked for.

The complainant does not ask for the full relief which he is
apparently entitled to have from this court. He only asks
that the defendant be perpetually enjoined from having win-
dows in the wall, and does not ask that he be required to remove
all that portion of the wall which is on the complainant's land.
The main purpose of the complainant is not to enforce a removal
of the encroaching wall, but to prevent the acquisition by the
defendant of rights in the land of the complainant by lapse of
time. He fears that the defendant may acquire a permanent
right to the free access of light and air over the land of the
complainant, and, as a consequence, the complainant will be
unable to fully use his own land in the future by erecting on it
any structure which will interfere with the windows of the
defendant's building. Of course, the complainant has a right
to physically obstruct all these windows, until or unless the
defendant has acquired a right to light and air by prescription.
*Pierce v. Lemon,* 2 *Houst.* 519, 522. It is unnecessary to indi-
cate the extent of the rights of the complainant in this behalf.
He does not explain why he has not exercised his right to
obstruct them, and it is not necessary that he should make
such explanation, if he has other remedies for his protection.

The complainant has not sought a legal remedy by eject-

ment to recover possession of his nine inches of land, nor does he ask this court to order the removal of the encroaching wall; nor does he apply the remedy of physical obstruction. He asks that the court make such an order as will prevent the acquisition by the defendant of an easement and enforce the removal of the defendant's windows from the wall. In thus asking this court to do less than he might have asked this or some other court to do, and so imposing a lesser burden on the defendant than might be imposed, the complainant has come into this court in a commendable spirit. He seeks less than he may be entitled to have in order not to unreasonably injure the defendant. In other words, having a right to have the wall removed from his land, the complainant in this proceeding asks only that the windows in the wall be removed, and that the defendant be prevented from acquiring a right in the land of the complainant by a continuance of the windows beyond a certain time.

Therefore, the complainant is entitled to a mandatory injunction to enforce the removal of the windows in the wall, in accordance with the prayers of the bill. The complaint against the projection of parts of the windows of the defendant and the rain spout beyond the face of the wall and over the land of the complainant, will be relieved by relieving the greater injury.

According to *Pierce v. Lemon, supra,* damages can be recovered for encroachments by cornices in the wall which overhang adjoining land. They constitute an unlawful and wrongful encroachment upon the property of the complainant, and an injury to his possession of it and his legal rights and title to it, for which he would be entitled to recover damages equivalent to the wrong and injury thereby done him in the premises. There is a difference of opinion whether ejectment will lie in such cases. But there seems to be no decision against the right to a mandatory injunction for their removal. But in view of the relief to be granted, it is unnecessary to consider further this branch of the case.

There is another important question to be considered: The bill and demurrer raise the question, quite distinctly,

whether in this State an easement of light and air can be ac-
quired by prescription, for the case which the complainant
has made by his bill is based on the existence in this State of
such a principle. Whatever may be the law elsewhere, it was
decided in 1873 by a distinguished and learned Chancellor,
Daniel M. Bates, in the case of *Clawson v. Primrose*, 4 *Del. Ch.*
643, that such a right might be so acquired in England prior
to the separation of the colonies, and, therefore, that it became
part of the law of this State.

It is not necessary to review this case, or even to argue
whether it was decided rightly or wrongly. It received elabo-
rate consideration from a later Chancellor of ability, Willard
Saulsbury, in 1885 in the case of *Hulley v. Security Trust, etc.,
Co.*, 5 *Del. Ch.* 578, and while he expressly disclaimed an inten-
tion to overrule it, because the facts did not warrant the appli-
cation of it to that case, he still indicated very clearly that in
his opinion the English rule was not necessarily incorporated
into the law of this country. *Clawson v. Primrose* has been
criticised elsewhere. But notwithstanding these comments on
the decision of Chancellor Bates, I do not feel at liberty to dis-
regard it or overrule it in this case, or refuse to give the complain-
ant in this case relief based on it. It seems to me to be a proper
exercise of the discretionary and equitable powers vested in
this court to do for the protection of the rights of the com-
plainant what he cannot do for himself, viz., prevent the acqui-
sition by the defendant of a right over the land of the com-
plainant under circumstances where the defendant ought not
to be allowed to acquire the right, for if the defendant acquires
the right, it will deprive the complainant of the right to use all
his land to the full extent of his rights. The complainant can-
not by suit, or repeated suits at law, or by any other means
than a physical obstruction, prevent the acquisition of the
right. Repetition of other acts of trespass may be the basis
of prescriptive rights, but these can be prevented by suits at
law, each trespass giving a cause of action. But no action at
law will lie against the maintenance of windows overlooking
another's land. *Pierce v. Lemon, supra.* The owner of the
servient tenement must sit by and have his neighbor acquire a

right over his land and be powerless to prevent it, except by building a physical obstruction. Such an obstruction may be expensive, and it is quite conceivable in these days of very high buildings that it would be impossible to obstruct them. Why should not this court assist one who is under the peculiar state of the law and the unusual conditions unable to help himself?

Injunctive relief will be given to prevent the acquisition of a prescriptive right to do a wrongful act, though no actual present injury be done by such act or acts. 5 *Pomeroy on Equitable Remedies, p.* 877; *Meyer v. Phillips,* 97 *N. Y.* 485, 49 *Am. Rep.* 538; 1 *High on Injunctions,* §702; *Johnson v. City of Rochester,* 13 *Hun.* (20 *N. Y.*) 285 (using complainant's land as a way or street); *Amsterdam Knitting Co. v. Dean,* 162 *N. Y.* 278, 56 *N. E.* 757 (unlawful diversion of a stream); *Newaygo, etc., Co. v. Chicago, etc., R. R. Co.,* 64 *Mich.* 114, 30 *N. W.* 910; *Murphy v. Lincoln,* 63 *Vt.* 278, 22 *Atl.* 418 (use of way under a claim of right); *Mott v. Ewing,* 90 *Cal.* 231, 27 *Pac.* 194 (diversion of a stream).

In *Meyer v. Phillips, supra,* the court enjoined the floating of logs down a non-navigable river which flowed over the complainant's land, because the defendant claimed a prescriptive right in the public to do so. The court found there was no such right in the public. But because by continuing to exercise the right which they claimed to have, the defendant might by lapse of time acquire a right by prescription, the court allowed the injunction in order to quiet title, settle his rights and prevent the threatened injury, and said it was abundantly so settled by authority of adjudged cases cited in the opinion.

The removal of the windows will probably render unnecessary an injunction to prevent the acquisition of the easement of light and air, but if the complainant is entitled to both remedies he should have them, though one of them includes the other, or may render the latter unimportant. The demurrer, therefore, is overruled.