## MANN v. BOYTS.

---

PARTY WALL; RIGHT TO BUILD; ESTOPPEL.

1. A landowner is not estopped by his failure to object to a party wall, where, during his absence from home, he received a letter from the architect of his neighbor stating that an addition to the latter's residence would extend to the party line, and asking consent to the extension beyond it of the moldings and cornice, declaring that, in case of refusal, his neighbor had the right to build the wall of the addition centered on the party line, and he promptly wrote back his refusal, and had no knowledge of the construction of the party wall until his return home, when the wall was nearly finished.

2. As the mutual benefit of the parties is the test of the right to build a wall upon a neighbor's land under authority of a regulation by the President of the United States, adopted in pursuance of a condition in the deeds of both parties that the conveyances are subject to such building regulations as the President may make for common con-

venience, safety, and order, a party wall may not be erected against the will of the adjoining owner, where he has already made important permanent improvements suitable to his property and the neighborhood, and the wall, if constructed, would not only materially destroy the enjoyment of his property in its present condition, but would also involve a radical change in the structure of his improvements, and cause him a large expense without any corresponding benefits. Citing *Smoot* v. *Heyl*, 34 App. D. C. 480; *Robinson* v. *Hillman*, 36 App. D. C. 576.)

3. Equity has power to grant a mandatory injunction to compel the removal of a party wall, constructed in violation of the rights and against the known opposition of the adjoining owner, so far as it encroaches upon his land. (Citing *Weeks* v. *Heurich*, 40 App. D. C. 46, Ann. Cas. 1914A, 972.)

No. 3074. Submitted January 10, 1918. Decided February 4, 1918.

HEARING from a decree of the Supreme Court of the District of Columbia granting a mandatory injunction requiring the removal of a party wall. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This was a suit in equity to determine the right to build a party wall. The appellant, Isaac T. Mann, defendant below, was the owner of a lot facing west on Sixteenth street between N and O streets, northwest, this city, and appellee, Celia M. R. Boyts, plaintiff below, was the owner of the lot adjoining on the south. The plaintiff having learned that defendant, without her consent, had erected a wall centered about on the line between their properties, applied for, and obtained, a mandatory injunction commanding him to remove it so far as it encroached upon her property.

*Mr. J. J. Darlington* and *Mr. W. C. Sullivan,* for the appellant, in their brief cited:

*Atty. Gen.* v. *Nichol,* 16 Ves. Jr. 337; *Bassett* v. *Salisbury Co.* 47 N. H. 431; *Berkey* v. *Coal Co.* 220 Pa. 78; *Blease* v. *Garlington,* 92 U. S. 1, 7; *Bliss* v. *Anaconda Copper Min. Co.*

167 Fed. 342; *Consolidated Jar Co.* v. *Wright,* 94 U. S. 92, 96; *Fowler* v. *Kohler,* 43 App. D. C. 356; *Gill* v. *United States,* 160 U. S. 426, 430; *Gimbel Bros.* v. *Milwaukee & B. Store,* 161 Wis. 496; *Harkness* v. *District of Columbia,* 1 MacArth. 133; *Hill* v. *Kimball,* 269 Ill. 416; *Kosack* v. *Johnson,* 38 App. D. C. 67; *Leather Mfrs. Bank* v. *Morgan,* 117 U. S. 96, 108; *Lehigh Coal Co.* v. *Lentz,* 228 Pa. 350; *McCleery* v. *Highland Boy Gold Min. Co.* 140 Fed. 954; *McKee* v. *Grand Rapids Co.* 127 Mich. 212; *Miller* v. *Elliott,* 5 Cranch, C. C. 543; *Morgan* v. *R. R. Co.* 96 U. S. 712, 720; *Parker* v. *Winnipisogee Lake Co.* 2 Black, 545, 551; *Robinson* v. *Hillman,* 36 App. D. C. 576, s. c. 41 App. D. C. 191; *Smoot* v. *Heyl,* 34 App. D. C. 480, s. c. 227 U. S. 510; *United States Bank* v. *Lee,* 13 Pet. 107; *Wakeling* v. *Cocker,* 208 Pa. 651; *Whittlesley* v. *Hartford R. R. Co.* 23 Conn. 433; *Wilson* v. *Shaw,* 204 U. S. 24, 31; *Wormser* v. *Brown,* 149 N. Y. 163; 3 Bl. Com. p. 5.

*Mr. Webster Ballinger,* for the appellee, in his brief cited:

*Baltimore Belt R. R. Co.* v. *Lee,* 75 Md. 596; *Baugh* v. *Bergdoll,* 227 Pa. 422; *Clayton* v. *Shoemaker,* 67 Md. 216; *Coughlin* v. *District of Columbia,* 25 App. D. C. 254; 22 Cyc. 782, J; *Daniel* v. *Tearney,* 102 U. S. 415, 26 L. ed. 187–189; *Fowler* v. *Koehler,* 43 App. D. C. 356; *Hailsch* v. *Duffy,* 92 Atl. 249; *Harber* v. *Evans,* 101 Mo. 665; *Kraft* v. *Scott,* 1 H. & H. (6 C. C. Rep. D. C.) 33; *Lederer* v. *Invest. Co.* 130 Iowa, 159; *Long* v. *Ragan,* 94 Md. 465; *Lynch* v. *Union Inst. for Sav.* 159 Mass. 308; *McCleery* v. *Mining Co.* 140 Fed. 951; *Norwalk* v. *Vernan,* 75 Conn. 662; *Rider* v. *Bentham,* 1 Ves. Sr. 543; *Robinson* v. *Hillman,* 36 App. D. C. 241; *Robinson* v. *Hillman,* 36 App. D. C. 576; *Robinson* v. *Hillman,* 41 App. D. C. 191; *Shipley* v. *Ritter,* 7 Md. 408; *Smoot* v. *Heyl,* 227 U. S. 517, 523; *Pennsylvania* v. *Wheeling, etc., Co.* 13 How. 567; *Szathmary* v. *Boston & A. R. Co.* 214 Mass. 215; *Tucker* v. *Howard,* 128 Mass. 361; *Traule* v. *White,* 46 N. J. Eq. 441; *White* v. *Flannigan,* 1 Md. 525.

Mr. Chief Justice Smyth delivered the opinion of the Court:

The points relied on by appellant are four. We shall consider them separately, but not in the order stated by him.

First: He asserts that there is error in the exclusion of certain testimony offered by him for the purpose of showing that the appellee had erected a party wall on the south line of her property long before he had attempted to construct one on the north line. In view of the conclusion which we have reached on the whole case, it is not necessary to pass upon this.

Second: Was appellee silent when she should have spoken, as appellant charges? The argument of appellant with respect to this is based chiefly on certain correspondence which passed between George O. Totten, Jr., the architect and agent of the appellant, and Mrs. Boyts, who was at Connellsville, Pennsylvania, at the time. Mr. Totten wrote to her that he had "just made drawings for an addition to Mr. I. T. Mann's residence," and that the addition would "extend to the party line between your property" and his; he stated that according to his drawings, the moldings and cornice of the addition would extend over her property "perhaps a foot," and asked her to consent to the extension. He inclosed a draft of a letter giving consent and addressed to the building inspector, for her signature; and added that if she refused, Mr. Mann had the right to build the wall "centered on the party line." She promptly declined to consent and so notified Mr. Totten by letter, which he admits receiving. None the less, the appellant constructed a wall not extending "to the party line between" the properties, but reaching over the line 5¾ inches. She had no knowledge that he was doing so until July 26, about two months after she had written her letter of refusal, when, after her return to Washington, she discovered that the wall was nearly finished. This is all upon the subject. She had a right to assume that Totten was telling her the truth, when he said that the drawings contemplated a wall which would go to the "party line" only, except the cornice and moldings; and it does not lie in his mouth or that of his principal to say now that because she did, she is estopped from challenging the validity of an act which she

knew nothing about until after it had taken place.  Refusal to consent to one thing does not in itself establish consent to something else.  If estoppel is to be applied to anyone it should be to the appellant, whose agent, Totten, lulled plaintiff into the belief that he would not build a party wall.

Third:  We now come to the most difficult phase of the case.  Did the appellant have the legal right, under the circumstances disclosed by the record, to erect the wall in controversy?  Both lots were improved.  The plaintiff had upon hers a spacious brick dwelling house, four stories and basement high, containing about twenty-five rooms, built in 1887 and occupied by her as a residence.  It was valued at $40,000.  The building was so erected that there was a space of over 40 feet between it and the sidewalk.  Between it and the property of the defendant was a concrete walk running the full depth of the building, 74 feet.  On the second story, north side, about midway the length of the building, was an oriole octagon bay window projecting about 3 feet, 5 inches, from the main dwelling and leaving a space of 5¾ inches between its outer edge and the defendant's lot line, except that there were a cornice and trimmings upon the windows which extended to the party line.

The defendant's building, occupied by him as a home, was constructed in 1881, six years before plaintiff's.  It also stood about 40 feet back from the sidewalk.  The south wall, that is, the one next to plaintiff's, run back 76 feet and was about 26 feet north of the party line, or a little more than 30 feet from plaintiff's building.  This was the relative situation of the respective properties of the litigants at the time Mr. Mann entered upon the construction of an addition to his house, which when built had as its south wall the one in dispute.  This addition, consisting of two stories and a basement, commenced 17 feet east of the front of his house and ran back only about 27 feet.  It extended south 26 feet, 5¾ inches, and onto the plaintiff's property.  In other words, the addition consists of a two-story projection approximately 26 x 27 feet, reaching from about the center of defendant's building to and across the party line.  To make room for the party wall, defendant removed

the cornice, sill, and other parts of plaintiff's oriole window. The wall completely blanketed the north side of the window, and thereby shut off the air and light which otherwise would have passed through it into plaintiff's house. There were 34 feet of glass area thus darkened, leaving but two small windows in the oriole window, one on the east and one on the west, having each a glass area of about 7 square feet. This resulted in making the center room of the house, "formerly a beautifully light room," so dark that "it can only be used by artificial light." There is testimony of experienced builders that plaintiff could not use the party wall, it being only 13 inches thick, "without reinforcing it with steel," and in no event without removing her north wall, which would require "supports under the present wooden joists, which would be a very expensive operation." It was also shown that plaintiff's house was 58 feet 10 inches high, and that under the building regulations the outer wall of such a house for the first story should be 18 inches, and that hence the party wall could not be used without increasing its thickness. The testimony further disclosed that if plaintiff moved her north wall, she could not use the entire 27 feet of the party wall, because the building regulations would require her to maintain an air and light shaft between her house and the addition 5 feet wide, and not less than 10 feet long, thus preventing her from utilizing more than 17 feet of that wall. Mr. Totten said that the reason for building the party wall was "that it gave 5 or 6 inches more space" to defendant's room and made it "brighter." From this testimony it appears very clearly that the plaintiff has sustained a very serious injury to her property by reason of the construction of the wall, and that she could not utilize it to any advantage without making a radical change in the north side of her house at very great expense,—a change which in all probability would destroy the symmetry of the building and result in an architectural hodgepodge.

Defendant predicates his right to appropriate plaintiff's property without her consent, and build thereon, upon building regulations of the city of Washington made in pursuance of a condition in deeds through which both parties claim. These

deeds conveyed the land "on and subject to such terms and conditions as shall be thought reasonable, by the President for the time being, for regulating the materials and manner of the buildings and improvements of the lots, generally in the said city, or in particular streets or parts thereof, for common convenience, safety, and order." Pursuant to this authority, the President of the United States adopted a regulation which provides "that the person or persons appointed by the Commissioners to superintend buildings may enter upon the land of any person to set out the foundation and regulate the walls to be built between party and party, as to breadth and thickness thereof." That provision was in force when the parties to this litigation acquired title to their respective properties. It does not in specific terms empower an adjoining owner to build upon the property of his neighbor, but, assuming that it does, when may the power be exercised? The deed giving the President the right to prescribe the regulation says that it shall be done "for *common* convenience, safety, and order." The power thus conferred, since it authorized one person to take the property of another against his will and without giving any present consideration therefor, must be strictly construed. *Smoot* v. *Heyl*, 34 App. D. C. 480. And the Supreme Court of the United States, affirming the decision of this court in the *Smoot Case*, and construing the power we are discussing, said: "The fundamental idea is that of mutual benefit." In *Robinson* v. *Hillman*, 36 App. D. C. 576, this court decided that every wall constructed by an adjoining owner "in serving his own needs is not necessarily a party wall, within the meaning of the regulations;" that it must be "such a wall as will satisfy the reason and purpose for which the regulation was devised." And we have just seen that this purpose is the "mutual benefit" of the parties. Mutual benefit, then, is the criterion by which to determine whether or not the power may be exercised. If the benefit is unilateral, not mutual, the wall may not be constructed. Applying this test to the wall in question, we are not able to say that it constitutes a mutual benefit. On the contrary, we think, as we have before indicated, it is a positive injury to the appellee. Even the appellant denies that either

he or his counsel claims the right "to build a party wall simply because there is a physical opportunity to do so." Thus he admits that the right is not absolute, but limited; and this being so, the problem, difficult to solve, is, What are those limitations? It is not practical to enumerate them. Each case must rest upon its own facts. Let it suffice to say here that a party wall may not be erected against the will of the adjoining owner where he has already made important permanent improvements suitable to his property and the neighborhood, and the wall, if constructed, would not only materially destroy the enjoyment of his property in its present condition, but would also involve a radical change in the structure of his improvements, and cause him a large expense without any corresponding benefits to him. Where those conditions appear, as in the present case, it cannot be said that the party wall is for the "common convenience" or the "mutual benefit" of both parties.

Fourth: Appellant denies the jurisdiction of equity, especially the power to grant a mandatory injunction, in this case, and says plaintiff should be remitted to her remedy at law. We cannot assent to this. The wall having been erected on plaintiff's land in violation of her rights, equity has ample power to compel its removal. *Weeks* v. *Heurich*, 40 App. D. C. 46, 60, Ann. Cas. 1914A, 972. In *Haitsch* v. *Duffy*, 10 Del. Ch. 280, 92 Atl. 249, it was said that "a mandatory injunction may be awarded by a court of chancery to enjoin the continuance of an encroachment [upon land] and compel a removal thereof" (citing many authorities), and added that the power to do so was "based on the peculiar nature of the right invaded and the subject-matter affected, *viz.*, land." (See *Long* v. *Ragan*, 94 Md. 465, 51 Atl. 181, and *Herr* v. *Bierbower*, 3 Md. Ch. 458. The defendant here went upon the plaintiff's property wrongfully, and, with full knowledge of her opposition, constructed the wall. Plaintiff cannot be forced to sell her property to him, but equity will compel him to restore the premises, as nearly as may be, to their original condition. *Tucker* v. *Howard*, 128 Mass. 361. See also *Lynch* v. *Union Inst. for Sav.* 159 Mass. 308, 20 L.R.A. 842, 34 N. E. 364. "Where one intrudes upon the land of another, the latter has

choice of remedies; he may compel a withdrawal of the intruder, or he may regard the intrusion as a permanent trespass and recover compensatory damages therefor." *Baugh* v. *Bergdoll,* 227 Pa. 420, 423, 76 Atl. 207; see also *Szathmary* v. *Boston & A. R. Co.* 214 Mass. 42, 100 N. E. 1107; *Norwalk Heating & Lighting Co.* v. *Vernam,* 75 Conn. 662, 96 Am. St. Rep. 246, 55 Atl. 168; 22 Cyc. 782; *Baltimore Belt R. Co.* v. *Lee,* 75 Md. 596, 601, 23 Atl. 901; 5 Pom. Eq. Jur. 833; High, Inj. 704. In *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417, 449, 35 L. ed. 1063, 1075, 12 Sup. Ct. Rep. 239, where one of the parties had gone as a trespasser upon the land involved in the suit, and then challenged the power of a court of equity to remove him, Mr. Chief Justice Fuller said: "It cannot be held that this trespass on appellant's part constituted a possession which in itself would drive complainant to an action of ejectment." These cases, and many others that might be cited, show conclusively that equity has power to force the defendant to remove his wall from the property of the plaintiff.

The judgment of the lower court is right and is therefore affirmed, with costs. *Affirmed.*