## McWilliams et al. *v.* Horstman.

(Decided August 3, 1928.)

*Mr. Edward J. Dempsey* and *Mr. Clarence A. Schnieders,* for plaintiffs in error.

*Messrs. Matthews & Matthews* and *Mr. Theodore Horstman,* for defendant in error.

Mills, J.   Horstman was plaintiff below, and Mc-Williams and Schulte, individually and as partners,

were defendants below. They will be so designated here.

Plaintiff brought his action in the court of common pleas on October 8, 1925, praying for the possession of a certain parcel of land in the city of Cincinnati, and for $6,000 damages for the alleged wrongful acts of the defendants. The alleged wrongful acts were described as the unlawful exclusion of the plaintiff from the possession and from the rents, issues, and profits of the premises, from about January 1, 1922, to the time of the filing of the petition.

The case went to trial on the petition, an amended answer and cross-petition, and a reply to the amended answer and cross-petition. It was tried to the court without the intervention of a jury.

In his petition the plaintiff set out with particularity a description of the land to which he claimed title and the right of possession. Briefly, plaintiff's land was known as Lot H of the Subdivision of Lot 25 of the Thomas Marsh Estate and fronted on the southerly side of Gest street 336½ feet west of McLean avenue. Plaintiff claimed that its frontage was 44.67 feet and that its easterly and westerly boundary lines (which ran at right angles to Gest street) were respectively 262 feet and 290 feet long. The defendants denied that they had used or possessed any part of Lot H; but they alleged that the claims set out in the plaintiff's petition relative to the location of the southerly boundary line of Lot H constituted a cloud upon their title to certain land lying to the south of Lot H.

Defendants prayed for general equitable relief; and plaintiff prayed that the court fix the boundary

lines separating Lot H from the lands of the defendants lying both to the west and to the south.

It was admitted by both parties that the southerly boundary line of Lot H was "the center line of the old bed of Mill Creek, a water course that formerly existed in that locality."

Briefly, therefore, the issues made by the pleadings were (1) the location of the westerly line of Lot H; (2) the location of "the center line of the old bed of Mill Creek" from a point 336½ feet west of McLean avenue to the westerly line of Lot H; (3) the question whether the defendants had wrongfully excluded plaintiff from the possession and the rents, issues and profits of any part of Lot H; and (4) the reasonable value of such exclusive use and occupancy.

The trial court found the frontage of plaintiff's lot was only 44.50 feet, and that its easterly and westerly boundary lines were respectively only 158.54 feet and 195.16 feet long. It was decreed by the trial court that the title of defendants be quieted as to all land lying south of a straight line drawn between the southerly ends of the easterly and westerly boundary lines so fixed.

The trial court also found that from January 1, 1922, to November 26, 1927, the defendants "had unlawfully excluded the plaintiff from said premises, and deprived him of the rents, issues and profits arising therefrom, and used said premises during said time for their own benefit" to the value of $20 a month, "plus the sum of $100 for the encroachment of lumber along the plaintiff's west line." Pursuant to this finding, judgment for the

sum of $1,340 was awarded plaintiff against the defendants.

Motions for a new trial were made by both plaintiff and defendants and were overruled. Defendants filed their petition in error, accompanied by a complete bill of exceptions, certified as containing a record of all the evidence offered at the trial.

Plaintiff filed a cross-petition in error.

Defendants complain that the judgment for $1,340 is contrary to law and to the manifest weight of the evidence.

Plaintiff complains that the judgment below as to the location of the southerly boundary line of Lot H is contrary to the law and the weight of the evidence.

The defendants, as plaintiffs in error, have filed a motion to dismiss the cross-petition in error, on the ground that plaintiff has filed no bill of exceptions. Defendants insist that the bill of exceptions is not available to the plaintiff, and that plaintiff has therefore no matters here for adjudication under his cross-petition in error.

We are of the opinion that, upon the filing of the cross-petition in error, the bill of exceptions became available to the cross-petitioner in error as to all errors to which such bill shows him to have reserved exceptions. In the case of *Yaryan* v. *City of Toledo,* 75 Ohio St., 307, 79 N. E., 465, our Supreme Court has declared in the syllabus:

"A bill of exceptions taken and filed in a cause within the time limited by the statutes is available on proceedings in error to all parties whose exceptions therein appear."

Bearing on the controversy over the location of

the southerly (or southeasterly) boundary line of Lot H, plats were received in evidence purporting to represent surveys made between the year 1856 and the year 1872. In those plats there is a varied discrepancy as to the location of the center line of Mill Creek south of Gest street and west of McLean avenue. It is in evidence, however, that in the year 1872, or thereabouts, the source of the stream was, pursuant to an act of the Legislature, diverted by the county commissioners, so that thereafter it no longer flowed over any part of the land in controversy in this case.

Plaintiff's lot H was one of the lots of a subdivision in partition of lot 13 and the unsold portion of lot 25 of the subdivision of the Thomas Marsh estate. That partition was made in the year 1883, in case No. 68096 of the court of common pleas; and the record shows that in the decree of partition in that case the southerly and easterly boundary lines of lot H were fixed to run ''northwardly with said center line of old bed of Mill Creek following the meanderings thereof, to the southwest corner of lot deeded to Drausin Wulsin by E. P. Marshall, thence north along the west line of said Wulsin's lot 82½ feet to said Wulsin's north line,'' and thence northwardly on a line parallel with McLean avenue and 336½ feet distant therefrom to Gest street. Here was an admission by the plaintiff's predecessors in title, at the time of their ownership of lot H, that the center line of the old bed of Mill Creek passed through at the southwest corner of the lot deeded by Marshall to Wulsin. The record shows that Court street appears to have been dedicated through the Anderson-Gregory subdivision,

but not through any part of the old Marsh subdivision, and that the southwest corner of the lot deeded by Marshall to Wulsin was in the north line of Court street, at a point 336½ feet west of McLean avenue. It is in evidence that the distance from Gest street on the north to Court street on the south, on the line distant 336½ feet westwardly from McLean avenue, was originally 165 feet, but there is evidence to show that, because of some shifting of Gest street, the distance between the two streets, measured on that line, has been reduced. Plaintiff's own testimony is that that distance is only 157.5 feet, but the court in its decree accepted the testimony of the engineer for the defense, fixing the distance at the larger figure, 158.54 feet.

It is in evidence that the plat of the Ross-Gregory subdivision, in Plat Book 1, pages 300, 301, of the Hamilton county recorder's office, represents the center line of the bed of Mill Creek as intersecting the north line of Court street at a point in what is now the easterly boundary line of the lot H now under discussion.

We are of the opinion that the weight of the evidence sustains the contention of the defendants that "the center line of the old bed of Mill Creek" intersects the northerly line of Court street at a point 336½ feet west of McLean avenue. This point is in the easterly boundary line of lot H. From this point, according to the record in case No. 68096 of the court of common pleas, the center line of the old bed of Mill Creek meandered over some course to reach the westerly boundary line of lot H. It is in evidence that the plat of the Ross-Gregory subdivision gives the course as a straight line running S.

52° W., and that that course would cause the included angle, between the easterly and the southerly boundary lines of lot H, to be 51 degrees. It seems to be undisputed that such angle of 51 degrees would make the westerly line of lot H 36.62 feet longer than the easterly line. According to the plaintiff's own contention, the old bed of Mill Creek did not at any point travel due southwardly across Court street, nor in a curved or zigzag line, but in a straight line. Plaintiff does not contend that the course of the old bed bore so much to the south as to make the westerly boundary line of his lot more than 36.62 feet longer than the easterly boundary line; nor does the evidence indicate that it did.

We are of the opinion that the judgment of the trial court fixing the southerly (or southeasterly) boundary line of lot H is supported by sufficient evidence.

Defendants complain that the judgment for $1,340 is excessive and not sustained by the evidence.

Plaintiff brought this action under Section 11306, General Code, which provides that a plaintiff may unite in the same petition "claims to recover real property, with or without damages for withholding it, its rents and profits, and the partition thereof." Plaintiff prayed for "judgment for the possession of said property," and for $6,000 as damages. The finding of the trial court was "that the defendants from January 1, 1922, to the date of this judgment have unlawfully excluded plaintiff from said premises, and have deprived him of the rents, issues, and profits arising therefrom, and used said premises during said time for their own benefit, which the court finds was of the value of twenty ($20.00)

dollars per month, plus the sum of one hundred ($100.00) dollars for the encroachment of lumber upon the plaintiff's west line." The plaintiff was also awarded judgment for recovery of the possession of lot H in accordance with the boundaries fixed by the court, together with $1,340 damages.

We are of the opinion that the judgment of the court fixing the boundaries of lot H, and awarding possession of the lot so delimited, is sustained by the evidence; but we are of the opinion that the award of damages is excessive and not sustained by the evidence.

It appears that the trial court, as the basis for the award, considered that the plaintiff had been wholly excluded from the entire lot. The evidence is that there was an encroachment by defendants on the west side of the lot for about a foot, and a like encroachment on a triangular portion of the lot at its southwest corner, and that defendants drove over various parts of the lot, as suited their convenience, for the purposes of their business—especially for hauling lumber, and piling lumber across the plaintiff's westerly boundary line.

While exactness could not be obtained in any way, we are of the opinion that the evidence does not support the damages assessed in excess of the sum of $650. But if the plaintiff will remit all of the money damages assessed in excess of the $650 and costs, the judgment will be affirmed. Otherwise the judgment will be reversed, and the cause remanded for a new trial.

*Judgment accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.